755 So.2d 15 (1999)
ESTATE OF James A. JACKSON, Anthony Jackson, Shondra Jackson and Jamian Jackson, Appellants,
v.
MISSISSIPPI LIFE INSURANCE COMPANY, Blackwell Chevrolet Company and D.L. Massey, Appellees.
No. 97-CA-01536-COA.
Court of Appeals of Mississippi.
May 18, 1999.
Rehearing Denied September 14, 1999.
*16 James A. Bobo, Attorney for Appellants.
Kenna L. Mansfield, Jr., Kenneth G. Perry, Elizabeth L. Baine, Kelly D. Simpkins, Jackson, Attorneys for Appellees.
BEFORE SOUTHWICK, P.J., COLEMAN, AND THOMAS, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. James A. Jackson purchased an automobile from Blackwell Chevrolet. He informed the salesman that he desired credit life insurance. Following his death, the insurer refused to pay the claim, concluding that Mr. Jackson made material misrepresentation of his health on the insurance application. His estate and heirs brought suit, arguing that he was never asked the health questions and therefore someone on behalf of Blackwell or the insurance company had improperly completed *17 the form. The Hinds County Circuit Court entered summary judgment in favor of the defendants. We reverse as to all defendants but not as to all claims, finding that there are genuine issues of material fact regarding the events at the dealership that led to the errors on the insurance application.

FACTS
¶ 2. James A. Jackson wished to purchase an automobile on behalf of his twenty-year old daughter, Shondra, whose poor credit history prevented her from purchasing the vehicle herself. Shondra had promised her father that she would be responsible for the monthly payments. She helped care for her father, a diabetic who suffered from renal failure, diabetic retinopathy, and hypertension. As a result of his weekly dialysis, Mr. Jackson had a visible graft on the underside of his forearm. According to Shondra, his vision was deteriorating and his pupils had a "glassy blue film" over them.
¶ 3. On June 26, 1991, Mr. Jackson and Shondra went to Blackwell Chevrolet and asked to speak with salesman Robert Williams, whom a friend had recommended. The Jacksons went inside Mr. Williams's office in order to see "how much car he could get them into." Shondra claims that because of her father's poor vision and shaking hands, she filled out a credit application for him. In the blank on the application which asked for the applicant's occupation, Shondra filled in "retired." She further indicated that one source of income for her father was "(disabled) SSI."
¶ 4. After determining that Mr. Jackson was an acceptable credit risk, Williams informed them that they could purchase a new Chevrolet Cavalier for no more than $300 per month. The Jacksons agreed to purchase the Cavalier and went into the office of the Finance and Insurance Manager, Don Massey. There, Mr. Jackson was to sign over the title on the 1979 Lincoln Mark V which was being traded in and to complete the remaining paperwork. While inside Mr. Massey's office, Shondra claims that Mr. Massey asked her father if he wished to purchase credit life insurance. Mr. Jackson indicated that he would. Shondra claims that was the only discussion regarding credit life insurance and that Mr. Massey did not ask her father any health questions. Mr. Jackson was then given a stack of papers to sign. Because of his poor vision and shakiness, Shondra states that she assisted him in signing the papers by pointing to the signature line and following it with her finger. According to her, this was all done in front of Mr. Massey, who sat across from them at his desk.
¶ 5. Mr. Massey testified in his deposition that he did not remember the Jacksons. However, he claims that if a customer indicates that he wishes to purchase credit life insurance, he always asks them aloud the health questions. The three health questions and the answers were:
A. Are you now in good health, free from any disease or physical impairment and gainfully employed or able to perform the duties of any occupation for which you are reasonably qualified by education, training, or experience for wage or profit thirty (30) hours or more per week? Answer yes.
B. During the past five (5) years have you received medical advice, consultation or treatment for any of the following conditions? Heart disease, cancer, disease of the lungs or respiratory system or acquired immune deficiency syndrome? Answer no.
C. Are you retired, Totally Disabled or entitled to receive any disability benefits from any source, or do you have pending an application for disability benefits to any governmental agency or any other entity? Answer no.
*18 Mr. Massey went on to state that if an applicant responds negatively to question A or affirmatively to questions B or C, he asks for further information which he writes on the application. He claims that he informs the applicant that it is only an application which he will forward to the insurance company.
¶ 6. The purchase was made, title taken in Mr. Jackson's name, and payments made under the loan until Mr. Jackson's death on March 5, 1992 of cardiac arrest due to hypertension. One week later, Shondra submitted a claimant's proof of death to the insurance company. After reviewing Mr. Jackson's medical records, Mississippi Life determined that he was not in good health nor free from any disease on the date of the application. In a July 2, 1992 letter, Mississippi Life advised Shondra that there were material misrepresentations made in the application which gave it grounds for denying the claim. The company further requested Shondra to submit any additional information which might affect its decision to deny the claim. Shondra responded with a letter in which she stated that her father would not intentionally mislead anyone. She provided no further information. Specifically, she did not raise then the factual assertions that are central to this appeal that her father was never asked any of the health questions by the salesman. Finally, on September 17, 1992, Mississippi Life denied the claim due to material misrepresentations made by Mr. Jackson on the application. It refunded the full amount of the premium to the lender, General Motors Acceptance Corporation. The car was repossessed approximately one year later.
¶ 7. On February 24, 1995, the Estate of James A. Jackson, Anthony Jackson, Shondra Jackson, and Jamian Jackson filed suit against Mississippi Life Insurance Company, Blackwell Chevrolet, and D.L. Massey, alleging breach of contract, breach of fiduciary duty and failure to investigate by Mississippi Life. The Jacksons charged all of the defendants with breach of the duty of ordinary care, breach of the duty to exercise the level of skill reasonably expected of one in such an occupation, breach of the duty of good faith and reasonable diligence, breach of the duty of good faith and fair dealing, and fraud or negligent misrepresentation. Actual and punitive damages were sought.
¶ 8. Blackwell Chevrolet and D.L. Massey filed their motion for summary judgment, along with an itemization of undisputed facts, on April 10, 1997. The Hinds County Circuit Court granted the motion on August 18, finding that no jury could believe that Mr. Massey "undertook to represent Mr. Jackson as his agent for the purpose of procuring credit life insurance...."
¶ 9. The individual plaintiffs were dismissed from the suit on August 18, 1997. The trial judge found that they did not have standing to assert causes of action against the defendants because they were not named beneficiaries of the policy. He further noted that "only a personal representative may sue to recover the assets of a deceased person." Finally, the court relied upon the fact that the individual plaintiffs were not parties to the contract, had no legal interest in the automobile, and none were responsible for payment of the note.
¶ 10. Mississippi Life was granted summary judgment on October 16, 1997. A week before the hearing, the plaintiffs filed their response, which was that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is a genuine issue of material facts and that the moving party is not entitled to a judgment as a matter of law." That statement is just a quote from Rule 56(c), in no way tailored to assist the trial court in this case. The only other substantive statement in this response was that the relevant materials "include, but are not limited to, the Interrogatory Responses" of two of the defendants and the depositions of four named individuals. Attached to this brief *19 response was then almost 700 pages of documents. The plaintiffs' attorney did not even appear at the motion hearing. The court granted the insurance company's motion, relying upon its earlier finding that Mr. Massey did not undertake to represent Mr. Jackson as his agent. The court found no proof of negligent failure to train or to investigate. Finally, the court noted that the plaintiffs' response to the motion for summary judgment "makes only conclusory allegations that there are genuine issues as to material facts. The Plaintiff does not deny or even attempt to respond to Mississippi Life's itemization of the facts relied upon and not genuinely disputed, as is required by Uniform Circuit and County Court Rule 4.03."

DISCUSSION

I. Summary judgment
¶ 11. This Court conducts de novo review of orders granting or denying summary judgment and looks at all the evidence including admissions in pleadings, answers to interrogatories, depositions, and affidavits. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If the moving party is entitled to judgment it should be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment exist when one party swears to one version of material facts and another says the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. Franklin v. Thompson, 722 So.2d 688, 691 (Miss.1998).
¶ 12. There were three different orders dismissing parts of the case. In determining whether judgment should have been granted, we must examine each motion, response and ruling to determine whether the movant in fact was entitled to judgment if the facts upon which it relied were undisputed, and whether the response went beyond the assertions of the complaint and revealed evidence to support that there was a dispute. M.R.C.P. 56(c) & (e). We must also examine the impact of a circuit court rule that the party seeking judgment must file "an itemization of the facts relied upon and not genuinely disputed and the respondent shall indicate either agreement or specific reasons for disagreement" that they are undisputed. URCCC 4.03. There is, in other words, both a procedural and a factual component to the review of the granting of these motions.

A. Dismissal of individual plaintiffs
¶ 13. The individual plaintiffs, James A. Jackson's children, were dismissed as not having standing to assert causes of action against the defendants. They were not named beneficiaries under the policy, they are not parties to the contract, they have no legal interest in the automobile, and they are not responsible for payment of the note. Finally, the court reasoned that "only a personal representative may sue to recover the assets of a deceased person."
¶ 14. Before determining who may present the cause of action, we need to identify just what is the cause of action that has been brought. The plaintiffs allege that the insurance company defaulted under a validly issued policy. The primary beneficiary of the policy was the lender, General Motors Acceptance Corporation. The secondary beneficiary was Mr. Jackson's Estate. The policy was not for a fixed amount. The policy started with a benefit equal to the total amount of the payments due under the loan ($16,131) if no prepayment occurred, and then declined in an equal sum ($268.85) each month for 60 months such that it would reach a zero benefit at the 60th month. The loan also had a scheduled life of 60 months with payments of $268.85 per month. However, though the total payment that would have been made over 60 months was $16,131, that included a finance charge of $5621.26 on an amount financed of $10,509.74. Each monthly payment therefore represented a month's interest on the declining *20 principal as well as a payment on the principal. Since the first payment on the loan was due on August 11, 1991, and Mr. Jackson died on March 5, 1992, there would at most have been seven payments made. The death benefit would have been $16,131(7 × $268.85) = $14,249, with perhaps some adjustments for how soon the claim was made.
¶ 15. This figure should be compared to the initial amount financed of only $10,509.74. Some reduction in principal would have resulted from each of the seven payments. Even with prepayment costs that might have properly been charged under the loan documents, a balance to the Estate from the insurance proceeds would seem still to have resulted.
¶ 16. The exact amount of the benefit at the time of Mr. Jackson's death under a valid policy and whether there would have been any surplus for the Estate above what was owed GMAC was not clearly established. It is enough for our analysis, though, that even if only the debt itself was paid that would have made a more than $10,000 impact on the Estate. Since GMAC did not get paid with the insurance proceeds, it sought the balance on the loan from the Estate. The automobile itself was repossessed. Therefore if the policy is valid, the Estate will have more assets to distribute to the residuary beneficiaries than if the policy is not.
¶ 17. We agree that the administrator has the right to bring an action to protect the assets of the estate. Miss Code Ann. § 91-7-231 (Rev.1994). One of the civil rules more generally addresses who are proper parties in litigation. "An executor, administrator ... or a party authorized by statute may sue in his representative capacity without joining with him the party for whose benefit the action is brought." M.R.C.P. 17(a). The supreme court has held that this rule permits residuary beneficiaries under a will to be listed as nominal parties in an action brought by the executrix. Wirtz v. Switzer, 586 So.2d 775, 785 (Miss.1991). The participation of the beneficiaries at least in name provided some protection to the executrix from future claims by them. Id. at 786.
¶ 18. The administratrix, as the real party in interest, must be in the suit. It is permissible for the judge to allow the residuary beneficiaries to remain in a lawsuit as nominal plaintiffs under MRCP 17 and Wirtz. Prior to the adoption of the civil rules, there is Mississippi case law holding that only the administrator can be a party. E.g., Thornton v. Insurance Co. of North America, 287 So.2d 262, 266 (Miss.1973). We find such precedents to have been superceded by Rule 17. It is still a matter of discretion, however. Since we find that the trial court did not find that it had discretion, we reverse and remand the dismissal of the individually named plaintiffs. The court under the standards of Wirtz can determine whether they should be permitted to participate at least as nominal parties.

B. Judgment in favor of D.L. Massey and Blackwell Chevrolet Company
¶ 19. On the same day as the three individual plaintiffs were dismissed, the circuit judge in a separate order granted summary judgment to the salesman Massey and Blackwell Chevrolet. This left only the insurance company in the suit. The court determined that "Ms. Jackson's testimony establishes that nothing was said about credit life insurance except Mr. Massey's inquiry as to whether Mr. Jackson wanted it, and Mr. Jackson's affirmative answer to that inquiry. On these facts, no reasonable, fair-minded jury could find that Mr. Massey undertook to represent Mr. Jackson as his agent for the purpose of procuring credit life insurance...." We too examine the inferences.
¶ 20. The supreme court has held that a bank which offered credit life insurance to its borrowers became their agent. First United Bank of Poplarville v. Reid, 612 So.2d 1131, 1137 (Miss.1992) The court noted that "[i]t is undisputed, however, *21 that the Reids were offered and accepted credit life insurance with respect to their loan and each extension thereof. Under the circumstances, the bank indeed became their agent for the procurement of such insurance. As such the bank was charged with a duty of good faith and reasonable care." Id. The circuit court may well have found here that unlike in Reid, there was no evidence of what happened after Mr. Massey's question and Mr. Jackson's affirmative answer. However, the Jacksons' assertion if believed does constitute evidence that Mr. Jackson accepted credit life insurance. The other evidence reveals that he in fact paid the premium for it and was issued a policy. What is not known, if the Jacksons' assertion as to what happened is believed, is how the answers to the health questions were entered on the form.
¶ 21. Since credit life insurance was obtained, a reasonable, fair-minded jury would almost have to find that Mr. Massey became James Jackson's agent for the purpose of procuring it. Mr. Massey concedes as much. He stated he did not recall meeting with the Jacksons but that he always asks the health questions. However, even under Mr. Massey's construction of the facts, he asked Mr. Jackson the questions and the answers written were based on what Mr. Jackson said. What is therefore proved is that Mr. Massey was Mr. Jackson's agent for procuring the insurance. What definitely is not proved is whether Mr. Massey did anything wrong but that is not our present question.
¶ 22. "The burden of proving an agency relationship rests upon the party asserting it." Id. The Jacksons' evidence supports that the Blackwell employee asked about the insurance; Mr. Massey's evidence supports that he asked about it and filled in the answers based on what he was told.
¶ 23. A jury might also find that Mr. Massey was the agent for both Blackwell and Mississippi Life. By statute, "[e]very person who solicits insurance on behalf of any insurance company, or who takes or transmits, other than for himself, an application for insurance or a policy of insurance.... shall be held to be the agent of the company for which the act is done...." Miss.Code Ann. § 83-17-1 (Rev.1991). If a bank employee is authorized to sell credit life insurance on the bank's loans, the supreme court has held that the employee is an agent for both the insurance company as well as the bank. Pace v. Financial Sec. Life of Mississippi, 608 So.2d 1135, 1136 (Miss.1992). If the events are as the Jacksons allege, it is unlikely that they will ever be able to prove what happened after Mr. Jackson and his daughter left the dealership. A fact-finder could accept, though, that someone at Blackwell or at the insurance company completed the application, and that the Jacksons were charged and paid the premium without being asked the health questions. "The rule is well established in this State that where the agent of an insurance company undertakes the preparation of an application for insurance, and by mistake or omission, fails to correctly write down the answers to questions propounded to the applicant, the company will be bound by the knowledge acquired by the agent just as if the agent had correctly written the answers in the application.... The same rule applies where the agent who undertakes the preparation of the application fills in incorrect answers without asking the applicant the questions." Jefferson Life & Cas. Co. v. Johnson, 238 Miss. 878, 883, 120 So.2d 160, 162 (1960). The rationale behind the rule is that the insurer "is estopped from pleading the provisions of the policy which provide that it should be void if the questions are not correctly answered in the application; or, as it is otherwise said, the insurance company waives the right to rely on a violation of the terms of the policy." Id.
¶ 24. Even more on point and entirely consistent with the just-stated rule, "[w]here an insurance agent fills out an application of his or her own motion and *22 without inquiry, or of his or her own knowledge, for signature, the insurer ratifies the agent's acts by granting the policy, and if the agent was mistaken in the representations which the agent makes in the application, the insurer cannot insist upon it as a defense to recovery." COUCH ON INSURANCE, § 85:42 (3d ed.1995).
¶ 25. Reiterating the facts in order to apply those principles, we note that Shondra Jackson testified that Mr. Massey asked her father whether he wished to purchase credit life insurance and that he responded affirmatively. She stated that this was the only discussion regarding credit life insurance and that neither she nor her father answered the health questions. Taking this testimony as true, which we must on a summary judgment motion, then someone at Blackwell or at the insurance company answered the questions in order that the policy could be issued. D.L. Massey was Blackwell's employee, regardless of whether he was also the agent of the insurance company. Therefore Blackwell remains potentially responsible for the actions of its employee.
¶ 26. If the Jacksons' construction of the events is accepted, the policy should be recognized as valid. What other relief should be granted depends on the inferences that arise from this evidence. In either event Mr. Massey was Mr. Jackson's agent for procuring insurance. Whether Mr. Massey violated his obligations as an agent or whether Mr. Jackson made a material misrepresentation about his health remains a dispute of material fact. Therefore summary judgment in favor of Massey and Blackwell was inappropriate.

C. Judgment in favor of Mississippi Life Insurance Company
¶ 27. Two months after the dismissal of Blackwell and Massey, the court granted judgment to Mississippi Life for a variety of reasons. First, the court found that the plaintiffs had failed properly to respond to the summary judgment. According to a procedural rule governing motion practice in circuit courts, once a listing of uncontested facts is filed the "respondent shall indicate either agreement or specific reasons for disagreement that such facts are undisputed and material." URCCC 4.03(2). No response to Mississippi Life's statement of uncontested facts was ever presented by the Jacksons. Further, the Jacksons attorney did not even attend the hearing on the motion. Our first question to answer is the effect of these defaults.
¶ 28. Though a provision requiring itemization of undisputed facts is not in Rule 56 governing summary judgment, many courts around the country have adopted such a provision in local rules. A provision almost identical to URCCC 4.03(2) formerly was in the joint local rules for the northern and southern federal district courts of Mississippi. Local Rule 8(d) (deleted Sept. 1, 1996). The local rule stated that failure to submit the itemization or other required documents "may result in the denial of the motion" or other appropriate sanction. Id. Another court stated that the purpose of a similar rule was for "laying out the material facts in dispute clearly for a district court that is swamped with an overwhelming number of civil and criminal dispositive motions." Dominguez v. Eli Lilly and Co., 958 F.Supp. 721, 727 (D.P.R.1997). The rule also avoids "the recurrent problem of ferreting through the record" and "the specter of district judges being unfairly sandbagged by unadvertised factual issues." Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 920-31 (1st Cir.1983). Somewhat colorfully this has been called an "anti-ferreting rule." Id. at 931.
¶ 29. A court can impose an appropriate sanction for the failure to comply with the obligation to itemize the uncontested facts or to respond to the other side's itemization. Here, the plaintiffs proved the importance of an "anti-ferreting" rule by not only failing to indicate their disagreement with the allegedly undisputed *23 facts but by filing 700 pages of documents through which ferreting was the only recourse for the trial court. That is exactly what this rule is intended to avoid.
¶ 30. Nonetheless, the most severe penalty would be to take the facts in the moving party's itemization as admitted. Even if that would have been appropriate here, the trial court did not take that step. Instead, the court noted the plaintiffs default but then proceeded to examine the evidence. Further, the itemization of facts is actually consistent with the plaintiffs position. Most of the facts just state the eventsthe Jacksons' purchase of an automobile from Blackwell, that Mr. Massey was the salesman, and on through the transaction until the events of Mr. Jackson's death, the default on the loan payments, and the repossession. It was also said to be undisputed that "Mr. Jackson applied for credit life insurance" when the automobile was purchased, that a question was asked on the application of whether Mr. Jackson was in good health, and the "answer to question A on the Certificate was `Yes.'" It was said to be uncontested that Mr. Massey did not remember the Jacksons but that he stated that "he always asks the questions in the Health Statement."
¶ 31. These and the other uncontested facts to which no response was filed by the Jacksons are in fact consistent with the Jacksons' assertions. By failing to file a point-by-point rebuttal the Jacksons in fact conceded no part of their case. Nowhere in Mississippi Life's statement of uncontested facts is it asserted that Mr. Jackson was asked the questions or filled them in himself. The basic factual assertion made by the Jacksons is that there was a brief mention of wanting credit life insurance and nothing further was asked. The closest thing to a challenge to that position that appears in Mississippi Life's itemization is that "Mr. Massey stated that although he did not remember Mr. Jackson, he always asks the questions in the Health Statement." Technically, what is said to be uncontested is whether Mr. Massey in fact stated this in his deposition. He certainly did state that. On the other hand, Shondra Jackson testified that no questions were asked. Even if this is a rather precise reading of Mississippi Life's itemization, it was obvious to the trial court that what happened at the meeting with Mr. Massey was disputed. The issue of this one sentence in the itemization does not change the clarity of the dispute. There is, in other words, no anti-ferreting problem.
¶ 32. It is useful to note that in Mr. Massey's own statement of uncontested facts supporting his and Blackwell's earlier motion for summary judgment, it was alleged as uncontested that the "only discussions relating to credit life insurance occurred when Mr. Massey asked Mr. Jackson whether he wanted credit life insurance, and Mr. Jackson responded by nodding his head affirmatively." In fact the defendants do contest that the "only discussions" were this limited.
¶ 33. We find that the plaintiffs made no procedural waiver of the contested facts. Further, even though the Jackson's attorney failed to attend the summary judgment motion hearing, which is a serious default approaching disrespect for the trial court and its proceedings, the court did not rely on that absence as the basis for any of the decision that we are reviewing here. We will not either.
¶ 34. Next, the court held that the dismissal of the agent Massey exonerated the insurance company. In other words, since no fact issues were found regarding wrong-doing by Massey, there was no means by which to hold the insurance company liable. We of course have determined that facts issue do exist as to Mr. Massey's actions. If the contested facts of whether anything was asked about Mr. Jackson's health are resolved by a finding that the Jacksons played no role in completing the health questions, then that could estop the insurer from arguing that *24 the policy was void. Jefferson Life & Cas., 120 So.2d at 162-63.
¶ 35. The trial court also found that there was no proof supporting the plaintiffs' theory that the insurance company had failed properly to train Mr. Massey. Indeed, the Jacksons argued that what Mr. Massey allegedly did was in direct violation of the training manual that was in evidence. The Jacksons made no fact issue regarding the training. The most that they could argue is that despite what Mississippi Life introduced about training, that training must have been ineffective. Such speculation is not evidence sufficient to overcome summary judgment. We affirm the dismissal of the claim for breach of a duty to train.
¶ 36. We also find that the trial court was correct that there was no genuine issue of material fact that the insurance company failed properly to investigate the claim. All the evidence shows that the company thoroughly investigated the claim, sought medical records, and asked the Jacksons in writing for any information that they had to indicate why the claim should be allowed. The only response given was that Mr. Jackson would never intentionally deceive anyone. In other words, until this suit was filed two and a half years after the claim was denied, the Jacksons never informed Mississippi Life that Mr. Massey allegedly had filled in the answers to the health questions without asking Mr. Jackson the questions. There is no liability here since "the level of negligence in conducting the investigation must be such that a proper investigation by the insurer `would easily adduce evidence showing its defenses to be without merit....'" Murphree v. Federal Ins. Co., 707 So.2d 523, 531 (Miss.1997), quoting Szumigala v. Nationwide Mut. Ins. Co., 853 F.2d 274, 280 (5th Cir.1988). There simply was nothing presented to the insurance company prior to their denial of the claim to dispute that Mr. Jackson himself improperly answered the questions, and that was with several requests to the Jacksons for more information. We agree that summary judgment was proper on the claims of improper investigation. A general allegation was also made that the insurance company had breached fiduciary obligations to the Jacksons. There is no fiduciary obligation between the insured and the insurer; that is an arms' length contract between two parties. Szumigala, 853 F.2d at 280 n. 7. Therefore that claim too was properly dismissed.
¶ 37. What is left open as to Mississippi Life is based on the factual uncertainty as to Mr. Massey and Blackwell. The disputed facts regard what happened as the documentation for this transaction was being completed. If a fact-finder determines that the Jacksons are credible, then the inevitable conclusion is that the questions were answered by someone else. That could entitle the Jacksons to the benefits of the policy on the basis of a waiver by the insurance company arising from the unilateral actions of its agent. In such an eventuality, the defendants' argument fails that these events could not be the proximate cause of injury since Mr. Jackson's health was such that no policy would ever have been issued by anyone.

II. Punitive damages
¶ 38. Punitive damages are sought against all defendants. The plaintiffs wholly failed to present anything in rebuttal to the insurance company's evidence regarding proper training and proper investigation of the Jackson claim. Thus those allegations cannot be the basis for punitive damages. What is left open is whether any defendant caused the health questions to be answered without seeking Mr. Jackson's own answers. That in itself might be malicious or grossly negligent, since misrepresentations in the answers could and did lead to the denial of a death claim.
¶ 39. It is undisputed that the questions were answered by someone but contested as to whether the Jacksons themselves did so. A fact-finder could conclude that Mr. *25 Jackson and his daughter answered the questions and did so falsely. Instead a jury could decide that Mr. Massey failed to ask the health questions and reasonably infer that he or someone later in the processing of the application incorrectly answered them without being concerned about accuracy in order to complete the paperwork. Lewis v. Equity Nat. Life Ins. Co., 637 So.2d 183, 185-86 (Miss.1994).
¶ 40. It is quite possible that there will never be clarity as to what happened. The final result in the case may largely turn on burden of proof and reasonable inferences. A "trial court, in determining if the issue should be submitted to the jury, must decide whether, under the totality of the circumstances and viewing the defendant's conduct in the aggregate, a reasonable hypothetical trier of fact could have found either malice or gross neglect or reckless disregard." Gulf Guar. Life Ins. Co. v. Duett, 671 So.2d 1305, 1309 (Miss.1996). But the case does not turn on the absence of contested material facts. It was erroneous to grant summary judgment.
¶ 41. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLEES.
McMILLIN, C.J., KING, P.J., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.