949 So.2d 38 (2006)
BRADDOCK LAW FIRM, PLLC, Appellant.
v.
Daniel E. BECNEL, Jr., Michael T. Gallagher and Gallagher, Lewis, Downey & Kim, Appellees.
No. 2004-CA-01237-COA.
Court of Appeals of Mississippi.
April 18, 2006.
Rehearing Denied August 22, 2006.
*41 C. Eric Malouf, Michael J. Malouf, Jr., Jackson, attorneys for appellant.
Daniel E. Becnel, Jr. (pro se), attorney for appellees.
Kevin P. Kilbert, Todd Brentley Ott, and Sheila M. Bossier, Jackson, attorneys for appellees.
Before MYERS, P.J., CHANDLER and GRIFFIS, JJ.
GRIFFIS, J., for the Court.
¶ 1. Braddock Law Firm, PLLC, ("Braddock") sued Daniel E. Becnel, Jr., Michael T. Gallagher, and his firm, Gallagher, Lewis, Downey and Kim, for breach of a fee splitting agreement. On the morning of trial, the chancellor granted summary judgment to Becnel. At the close of Braddock's case-in-chief, the chancellor dismissed the Gallagher defendants. Braddock appeals, and he claims the chancellor erred by: (1) not allowing Braddock to amend its complaint, (2) by not granting Braddock's motion for summary judgment, (3) by granting Becnel's motion for summary judgment, and (4) by dismissing the case against the Gallagher defendants. We affirm in part and reverse and remand in part.

FACTS
¶ 2. Gallagher successfully tried a products *42 liability case against Manufacturer[1]. Because of this, Manufacturer offered to settle a limited number of Gallagher's future cases for a certain dollar sum for each case. Although Gallagher practices law in Texas, he was associated with three Mississippi firms in other litigation. Those firms were Grenfell, Sledge and Stevens ("Grenfell, Sledge"), Schwartz and Associates ("Schwartz"), and Braddock. As a result of this prior association, Gallagher presented these Mississippi firms with this "window of opportunity" to accept Manufacturer's offer and settle their clients' cases, with Gallagher receiving a portion of the settlement proceeds.
¶ 3. According to Braddock, Gallagher agreed to split the fee forty percent to Gallagher, Grenfell, Sledge and Schwartz and sixty percent to Braddock on any of Braddock's clients. Braddock claimed that this was an oral contract, which was memorialized in writing a few months later. Braddock also testified this agreement was similar to other referral agreements his firm had with Gallagher in the past, all of which were oral. Gallagher testified that his referral agreements with other attorneys were always oral. However, Gallagher denies having this particular agreement.
¶ 4. Braddock contacted Bobby Gill and Richard Martin of the Eaves Law Firm. Braddock relayed this "window of opportunity" to them, and they agreed to split Braddock's referral fee among themselves, with three percent to Braddock and fifty-seven percent to Gill and Martin on any of Gill and Martin's clients.
¶ 5. Martin contacted Becnel with this offer. They agreed to split Gill and Martin's share of the referral fee, fourteen and a half percent to Gill and Martin and forty-two and a half percent to Becnel, on any of Becnel's clients. Becnel recognized that the Manufacturer's offer to Gallagher was more than three times the offer Becnel was able to secure from the Manufacturer for a majority of his clients. He accepted Gill and Martin's offer.
¶ 6. Subsequently, in breach of his agreement with Gill and Martin, Becnel personally met with counsel for the Manufacturer in order to get his cases settled on his own. Counsel for the Manufacturer would not settle with Becnel directly and told him that Gallagher was the only attorney with whom the Manufacturer was settling cases with at that time.
¶ 7. On June 21, 2001, Becnel met in New Orleans with Gallagher and Tim Goss, who worked with Gallagher. Just before the meeting, Gallagher had his secretary, in Houston, send a fax to Braddock to inform him that it looked like Becnel was going to pull his cases out of their settlement group. Becnel told Gallagher that members of Gallagher's Mississippi association "bad mouthed" Gallagher, and this made Gallagher angry. When Becnel talked about possibly firing the Mississippi association, Gallagher did not talk him out of it.
¶ 8. The next day, at 11:19 a.m., Gallagher faxed Braddock a letter that stated, "[w]e have all been fired by Danny Becnel." Nevertheless, Gallagher continued to work on Becnel's cases. In fact, a mere two hours later, immediately after lunch, Gallagher faxed a letter to Becnel to discuss obtaining proof on several of the clients.
*43 ¶ 9. There were two draft referral agreements between Gallagher and Becnel on Becnel's cases. The drafts called for a fee split of forty percent to Gallagher and sixty percent to Becnel. These drafts were dated June 22 and June 25, 2001, and both were typed by "ILY." On June 25, Becnel's office faxed a letter to Gallagher and Goss that confirmed the agreement reached June 21. It stated that Gallagher would continue to work on the cases, and "[w]e agreed on Thursday [June 21] that you would receive 40% of the fee in these cases, and we would retain 60% of same." While the fax was addressed to Gallagher and Goss, it was only addressed and faxed to Gallagher's office. In fact, all communications on the remaining cases were solely between Gallagher's and Becnel's offices.
¶ 10. Gallagher expressed concern that he might not be able to contract with Becnel. In the end, the contract was signed between Goss and Becnel on July 6. The contract was virtually identical to the June 25 draft Gallagher had prepared, and it was typed by "ILY" as well. However, the words "Mike Gallagher" were substituted with "Tim Goss." The record indicates that Gallagher emailed the June 25 draft to Goss, so Goss could print the contract out on his own firm's letterhead. We note that "Via Facsimile 504.536.6445" appears at the same place on both contracts, but because the rest of Becnel's address would run into preprinted information on Goss's letterhead, the rest of the contract is set further down on the page.
¶ 11. The settlement and payment of fees occurred soon after the New Orleans meeting. When Goss received the attorney's fees, he forwarded forty percent to Gallagher and sixty percent to Becnel. It was not until later, that Gallagher paid six percent of the fees to Goss.
¶ 12. During the same week, Gallagher drafted a complaint for declaratory judgment action, wherein Becnel sued Gallagher, Braddock, and the other Mississippi firms in federal court in Louisiana. The action sought to determine who had an interest in the fees that had been received. Gallagher never answered the complaint. The lawsuit was dismissed by the federal court for lack of subject matter jurisdiction.
¶ 13. Gill and Martin commenced a lawsuit against Becnel in Hinds County Chancery Court for intentional breach of contract. Braddock, Grenfell, Sledge, Schwartz, and Robert Arledge[2] intervened. Gallagher settled with Grenfell, Sledge, Schwartz and Arledge. Braddock then added the Gallagher defendants as parties.
¶ 14. The chancellor granted partial summary judgment against Becnel in favor of Gill and Martin. The chancellor found that Becnel owed Gill and Martin fourteen and a half percent of the attorney fees on a majority of the cases. Thus, Braddock claimed that he was due three percent in attorney fees for breach of the sixty percent referral agreement.
¶ 15. All parties agree that Becnel has in his possession fees that total three percent more than what he is owed. No other party claims this three percent except for Braddock. Becnel claims, for ethical reasons, he should be allowed to retain this three percent.

ANALYSIS
I. Should the chancellor have allowed Braddock to amend its complaint to allege civil conspiracy?
¶ 16. Braddock's first issue is that the chancellor committed reversible error *44 when he denied Braddock's motion to amend the complaint to include a count of civil conspiracy. Specifically, Braddock claims that the chancellor was presented with evidence that supported the cause of action, that the new cause of action merely clarified the claims asserted in his initial complaint, and that the chancellor failed to make findings of fact or give valid reasons for denial. The defendants argue the amendment would have caused undue delay and was futile.
¶ 17. A chancellor's decision whether to allow an amendment to a pleading will be reviewed for an abuse of discretion. Church v. Massey, 697 So.2d 407, 412-13 (Miss.1997). When a party moves to amend the complaint, "leave shall be freely given when justice so requires." M.R.C.P. 15(a). The supreme court has cautioned:
[T]his mandate is to be heeded . . . if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject for relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reasonsuch as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice . . . futility . . ., etc.the leave sought should, as the rules require, be `freely given.' . . . [O]utright refusal to grant the leave without any justifying reason . . . is . . . abuse of . . . discretion.
Red Enters., Inc. v. Peashooter, Inc., 455 So.2d 793, 795 (Miss.1984) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).
¶ 18. Braddock's original complaint, filed May 9, 2003, alleged that Braddock had a referral fee agreement with Gallagher, that Becnel had a referral fee agreement with Gill and Martin, and that Gallagher and Becnel breached their respective agreements. As a consequence, Becnel had in his possession attorney fees that belonged to Braddock because of his agreement with Gill and Martin. Braddock prayed for an accounting and equitable relief.
¶ 19. On December 5, 2003, Braddock filed a motion to amend his complaint to add a claim for civil conspiracy to breach contracts. The trial did not occur for another five months. Braddock alleged it discovered, during depositions, the New Orleans meeting where Gallagher and Becnel discussed firing the Mississippi attorneys but keeping Gallagher on the cases, and that they then contracted to this effect. Braddock alleged that this agreement was despite the representation from Gallagher that he too had been fired by Becnel, and despite the representation from each defendant that he was unaware of the other's existing contracts. Braddock also alleged that Gallagher drafted Becnel's lawsuit against Braddock and Gallagher himself in furtherance of this conspiracy. Braddock requested the amendment in order to solidify its case against Becnel, since there was no direct agreement or contractual relationship between Braddock and Becnel.
¶ 20. Braddock's amendment adequately pled a claim for civil conspiracy. A conspiracy is an agreement between two or more persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully. Gallagher Bassett Servs., Inc. v. Jeffcoat, 887 So.2d 777, 786(¶ 37) (Miss.2004). Where damages arise as a result, there may be a right of recovery for civil conspiracy. Id. Braddock pled that Becnel and Gallagher agreed to obtain all the attorney fees for themselves by breaching their respective *45 contracts. The pleading also indicates Gallagher may have also been breaching fiduciary duties, and Becnel may have been intentionally interfering with contract. As damages, Braddock claimed that he lost three percent of the attorney fees.
¶ 21. Nevertheless, the chancellor denied the motion and stated that Braddock did not need the amendment. The chancellor reasoned that the Gallagher defendants had plenty of money to pay the judgment, and that this was not a jury trial.
¶ 22. The morning of the trial, the chancellor granted Becnel's motion for summary judgment. When Braddock later moved for a Rule 15(b) amendment to conform to the evidence at trial, the chancellor denied the motion.
¶ 23. We find that the chancellor abused his discretion in denying Braddock's motion to amend the complaint to include a count of civil conspiracy. The reasons given by the chancellor are not valid reasons to refuse an amendment. Therefore, the chancellor's conduct amounts to "outright refusal without any justifying reason." This, the supreme court has ruled, is an abuse of discretion. Moeller v. Am. Guarantee & Liab. Ins. Co., 812 So.2d 953, 962(¶ 30) (Miss.2002); Red Enterprises, 455 So.2d at 795.
¶ 24. The defendants, nevertheless, urge that the amendment was futile and prejudicial. They claim it was futile because Braddock was not going to be able to prove a contract between Gallagher and Becnel. First, we note that there was evidence of a contract between Gallagher and Becnel. This evidence was what prompted Braddock to file the motion to amend. Second, futility of amendment occurs when there is either a statute of limitations problem or the amendment itself fails to state a cause of action. Stripling v. Jordan Prod. Co., 234 F.3d 863, 873 (5th Cir.2000). See also Knotts ex rel. Knotts v. Hassell, 659 So.2d 886, 889 (Miss.1995); Jones v. Lovett, 755 So.2d 1243, 1247-48(¶ 8) (Miss.Ct.App.2000) (overruled on other grounds). We find no case, and the defendants point to none, where futility was found from the mere fact that the defendant denied the allegation or otherwise pled a defense. The purpose of Rule 15 is that cases are to be tried on their merits. M.R.C.P. 15 cmt.; Red Enterprises, 455 So.2d at 795. A Rule 15 motion is not an invitation to try the merits of the case. That is reserved for trial.
¶ 25. The defendants claim that the amendment was prejudicial, because conspiracy to breach contracts is a separate, unrelated claim to breach of contract. The fact that an amendment raises a new, unrelated cause of action or is based on a different set of facts is immaterial. CEF Enters., Inc. v. Betts, 838 So.2d 999, 1005(¶ 27) (Miss.Ct.App.2003).
¶ 26. During oral arguments, Becnel posed another theory of prejudice that he would need to conduct discovery on civil conspiracy. Becnel stated he would need to take the Manufacturer's counsel's deposition to find out what happened in the June 19 meeting between the Manufacturer's counsel and Becnel. Becnel was at the meeting. He knows what happened. Moreover, he admits that the meeting took place and that the Manufacturer's counsel directed him to take his cases to Gallagher for settlement. Becnel also suggested he would need to take Goss's deposition in order to find out what happened at the New Orleans meeting between Becnel, Goss and Gallagher. Again, Becnel cannot argue he needs to discover what happened at a meeting he admits that he attended. Braddock may be entitled to such discovery.
*46 ¶ 27. We find merit to this issue. Accordingly, we reverse and remand for further proceedings on Braddock's civil conspiracy claim.
II. Should the chancellor have granted Braddock summary judgment?
¶ 28. Braddock claims that the chancellor should have deemed its itemization of facts admitted by the defendants. Therefore, the chancellor should have granted Braddock's summary judgment. In the alternative, Braddock claims entitlement to partial summary judgment on its constructive trust claim. The defendants argue that the chancellor was not required to deem admitted the itemization of facts. Becnel further argues that Braddock never alleged a claim for constructive trust. The Gallagher defendants assert that Braddock admitted that whether or not a contract existed between them and Braddock was a triable issue.
A. Should the chancellor have deemed Braddock's itemization of facts admitted?
¶ 29. "Movants for summary judgment shall file with the clerk as a part of the motion an itemization of the facts relied upon and not genuinely disputed and the respondent shall indicate either agreement or specific reasons for disagreement that such facts are undisputed and material." URCCC 4.03(2). "A court can impose an appropriate sanction for the failure to comply with the obligation to itemize the uncontested facts or to respond to the other side's itemization." Estate of Jackson v. Miss. Life Ins. Co., 755 So.2d 15, 22(¶ 29) (Miss.Ct.App.1999). "Nonetheless, the most severe penalty would be to take the facts . . . as admitted." Id. at 23(¶ 30).
¶ 30. In Estate of Jackson, the defendant moved for summary judgment. Id. at 18(¶ 10). Plaintiffs failed to respond specifically to its itemization of facts, only cursorily responded to the motion itself, and failed to appear at the summary judgment hearing. Id. at 18-19(¶ 10). The court noted that the purpose of Rule 4.03(2) is "for `laying out the material facts in dispute clearly for a . . . court that is swamped with an overwhelming number of civil and criminal dispositive motions.'" Id. at 22(¶ 28) (quoting Dominguez v. Eli Lilly & Co., 958 F.Supp. 721, 727 (D.P.R. 1997)). The rule also avoids "the recurrent problem of ferreting through the record" and "the specter of . . . judges being unfairly sandbagged by unadvertised factual issues." Id. (quoting Stepanischen v. Merchs. Despatch Transp. Corp., 722 F.2d 922, 931 (1st Cir.1983)). The Jackson court found that the defendant's itemization of facts was all consistent with the Jacksons' assertions. Estate of Jackson, 755 So.2d at 23(¶ 31). The court further found that the trial court did examine the evidence, and "it was obvious to the trial court" that there was a genuine dispute of material fact. Id. Therefore, the court found no "anti-ferreting" problem and held the Jacksons "made no procedural waiver of the contested facts." Id. at 23(¶¶ 31-33).
¶ 31. We find this case dispositive on this issue. First, it shows that it is not mandatory for a judge to deem an itemization of facts admitted, when the itemization is not responded to pursuant to Rule 4.03(2). Second, we find no anti-ferreting problem here. The defendants, although not technically responding to Braddock's itemization of facts, did respond to its Motion for Partial Summary Judgment. It was apparent there were genuine disputes of material facts. Braddock claimed that Gallagher, through his partner Goss, breached the contract by forwarding the sixty percent attorney fees *47 to Becnel. The defendants claim that Goss was not Gallagher's partner, and therefore, Gallagher cannot be said to have breached his contract with Braddock through Goss's actions. Moreover, Talmadge Braddock admitted that whether or not a contract even existed between Gallagher and his firm was a triable fact. The dispute of facts were set out clearly before the trial judge. On these facts, we find Defendants did not waive their right to dispute the facts in this case. We affirm the chancellor's decision not to deem these facts admitted.
B. Should the chancellor have granted partial summary judgment on constructive trust?
¶ 32. This Court employs a de novo standard of review of a chancellor's grant or denial of summary judgment and examines all the evidentiary matters before itadmissions in pleadings, answers to interrogatories, depositions, affidavits, etc. McMillan v. Rodriguez, 823 So.2d 1173, 1176-77(¶ 9) (Miss.2002) (citations omitted). The evidence must be viewed in the light most favorable to the party against whom the motion has been made. Id. at 1177(¶ 9). If, in this view, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his or her favor. Id. Issues of fact sufficient to require reversal of a summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite. Id.
¶ 33. Braddock conceded at the hearing that it would have to prove the existence of a contract between Braddock and Gallagher, in order to prevail upon its constructive trust claim against Becnel. Braddock admitted that whether there was such a contract was a triable issue. Because Braddock conceded there was a genuine issue of material fact, we affirm the chancellor's denial of Braddock's motion for summary judgment.
III. Did the chancellor err in granting Becnel summary judgment?
¶ 34. Braddock complains that the chancellor erred in granting Becnel's second motion for summary judgment because there were viable claims, and the judge should have let it prove its civil conspiracy claim. Becnel does not argue that the three percent does not belong to Braddock. He says only that the referral agreement was unethical, so he should be allowed to keep Braddock's share, and this Court should grant summary judgment on that basis. The chancellor, however, granted summary judgment on the basis that Braddock could prove no relationship directly with Becnel. The chancellor reasoned that Becnel may be liable to someone for the three percent fee, but it was not Braddock. The chancellor ruled that Braddock's only cause of action could be against the Gallagher defendants.
A. Declaratory action, accounting, and breach of contract
¶ 35. Although Braddock alleges that its claims for declaratory action, accounting, and breach of contract should have survived Becnel's motion for summary judgment, it offers no authority or argument as to why those claims should survive. This Court has repeatedly held that "[f]ailure to cite relevant authority obviates the appellate court's obligation to review such issues." Simmons v. State, 805 So.2d 452, 487(¶ 90) (Miss.2001) (citing Williams v. State, 708 So.2d 1358, 1362-63(¶ 11) (Miss.1998)). Additionally, the record shows that Braddock conceded that after it filed the action, the defendants did comply with an accounting. Accordingly, *48 we affirm the summary judgment in favor of Becnel as to declaratory action, accounting and breach of contract.
B. Constructive trust
¶ 36. Constructive trust is a means by which one who unfairly holds a property interest may be compelled to convey that interest to another to whom it justly belongs. In re Estate of Horrigan, 757 So.2d 165, 170(¶ 25) (Miss.1999). "Such a trust arises by implication from the relationship and conduct of the parties and may be established by parol testimony notwithstanding the statute of frauds." Id. "It is the relationship plus the abuse of confidence that authorizes a court of equity to construct a trust for the benefit of the party whose confidence has been abused." Thornhill v. Thornhill, 905 So.2d 747, 753(¶ 18) (Miss.Ct.App.2004) (quoting Davidson v. Davidson, 667 So.2d 616, 620 (Miss.1995)). A constructive trust:
arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, to hold and enjoy.
Sojourner v. Sojourner, 247 Miss. 342, 353, 153 So.2d 803, 807 (Miss.1963) (quoting 54 Am.Jur. Trusts, § 218). "An abuse of confidence within the rule may be an abuse of either a technical fiduciary relationship or of an informal relationship where one person trusts in and relies upon another, whether the relation is a moral, social, domestic, or merely personal one." Id. at 354, 153 So.2d at 807-08. "A confidential relationship within the rule need involve neither a promise for the benefit of another nor an express fiduciary relationship." Id., 153 So.2d at 808.
¶ 37. It is undisputed that Becnel has obtained three percent more in attorney fees than he is entitled. Becnel does not dispute that Braddock contracted with Gill and Martin in order to obtain this three percent. The chancellor held that Becnel breached his contract with Gill and Martin, and in doing so, obtained this additional three percent. This is a final judgment which is res judicata on Becnel. Therefore, the undisputed evidence shows that Becnel unfairly holds title to Braddock's property.
¶ 38. However, our inquiry does not end there. We note that Braddock does not allege that there is a confidential relationship between he and Becnel. A confidential relationship is a necessary element of constructive trust. He does not allege any relationship, formal or informal, in which he reposed trust in Becnel. The record reveals the only relationship between the two is a chain of contracts. Becnel contracted with Gill and Martin to settle his clients' cases with Manufacturer. Braddock contracted with Gill and Martin to place these same clients in Gallagher's settlement with Manufacturer. Viewing the evidence in the light most favorable to Braddock, all we can say is Becnel has Braddock's three percent attorney fee, but we cannot say that he obtained that fee by abusing a confidential relationship with Braddock. We affirm the chancellor's granting of summary judgment on constructive trust to Becnel.
IV. Did the chancellor err in dismissing the Gallagher defendants?
¶ 39. Braddock's final issue is that the chancellor erred in dismissing the Gallagher defendants after its case-in-chief, by finding Braddock failed to prove a contract *49 between it and the Gallagher defendants. Specifically, Braddock argues there was an oral agreement between it and Gallagher and a written agreement between Braddock and Gallagher's co-joint venturers. The Gallagher defendants argue Braddock was unable to produce documentary evidence or other witnesses that such a contract existed. They further argue that Mr. Braddock's testimony was not credible. They finally state that Goss contracted with Becnel on the cases, even though, by their own admission, Goss forwarded 100% of the attorney fees to Gallagher and Becnel.
¶ 40. In considering a motion for involuntary dismissal under Rule 41(b), the chancellor should consider "the evidence fairly, as distinguished from in the light most favorable to the plaintiff," and the judge should dismiss the case if it would find for the defendant. Century 21 Deep S. Props., Ltd. v. Corson, 612 So.2d 359, 369 (Miss.1992). We must apply the substantial evidence/manifest error standard to an appeal of a grant or denial of a motion to dismiss pursuant to M.R.C.P. 41(b). Id. Where there arguably is evidence that a party might be entitled to a judgment, the court errs in dismissing the case. Aronson v. Univ. of Miss., 828 So.2d 752, 756(¶ 14) (Miss.2002). We defer to findings of fact and review legal conclusions de novo. Id. at 755(¶ 12).
¶ 41. The chancellor ruled that the evidence boiled down to Mr. Braddock saying there was an agreement and Gallagher saying there was not. Because there was "nobody to support either one of them," the chancellor held it had no choice but to dismiss the breach of contract claim against the Gallagher defendants.
A. Was there a direct agreement between Braddock and Gallagher?
¶ 42. Mr. Braddock testified that he and Gallagher had an oral agreement on the subject cases, wherein Braddock would receive sixty percent of the fees, and Gallagher would retain forty percent. Pursuant to this agreement, Gallagher was to receive the settlement money from Manufacturer, retain forty percent attorney fees, and forward the sixty percent to Braddock. He produced documents wherein he and Gallagher mutually worked on the cases. Braddock presented a written contract wherein Grenfell, Sledge and Schwartz would pay him sixty percent attorney fees and retain forty percent fees on the subject cases. This contract was signed by Richard Schwartz and Arledge, with a blank signatory line for Grenfell, Sledge. There was no signatory line for Gallagher.
¶ 43. Braddock called Gallagher in its case-in-chief. Gallagher testified that Braddock was his only contact on these particular cases, and Braddock helped in getting the proof necessary on the cases. Gallagher admitted he always had oral referral agreements and had done so with Braddock in the past. Gallagher admitted that no attorney would hand over cases to another without a referral fee agreement. However, he denied ever having this particular agreement with Braddock. He claimed that it was Schwartz and possibly Grenfell, Sledge that made this agreement with Braddock, and Gallagher was to receive one-third of the forty percent from Grenfell, Sledge and Schwartz. He also testified that Grenfell, Sledge and Schwartz had made agreements with Braddock in the past, wherein Braddock would share in their portion of the attorney fees on cases it worked on.
¶ 44. In sum, Braddock testified there was an oral contract and presented evidence of course of dealing and course of performance between it and Gallagher to support its contract claim. Considering *50 the evidence fairly, Braddock satisfied its claim that it was entitled to a sixty percent share in the fees from Gallagher pursuant to an oral agreement.
B. Is Gallagher bound by the written agreement between Braddock, Grenfell, Sledge and Schwartz?
¶ 45. In the alternative, Braddock claimed there was evidence that Grenfell, Sledge and Schwartz were joint venturers with Gallagher in the settlement with Manufacturer, and as such, Gallagher is bound by the referral agreement signed by Mr. Schwartz and Arledge.
¶ 46. A joint venture is a single purpose partnership. Duggins v. Guardianship of Washington ex rel. Huntley, 632 So.2d 420, 427 (Miss.1993). As such, it is subject to the Uniform Partnership Act (UPA). Id. Where a joint venture exists, its members are bound by the acts of the other members acting in the course and scope of the joint venture. Id. See also Miss.Code Ann. § 79-12-17 (Rev. 2001). The UPA provides rules for determining whether a partnership exists:
(1) Except as provided by Section 79-12-31 persons who are not partners as to each other are not partners as to third persons.
. . .
(3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.
(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:
(a) As a debt by installments or otherwise,
(b) As wages of an employee or rent to a landlord,
(c) As an annuity to a widow or representative of a deceased partner,
(d) As interest on a loan, though the amount of payment varies with the profits of the business,
(e) As a consideration for the sale of the goodwill of a business or other property by installments or otherwise. . . .
Miss.Code Ann. § 79-12-13 (Rev.2001). The common law is still used to supplement the UPA. Smith v. Redd, 593 So.2d 989, 993 (Miss.1991). According to common law, the three main factors of partnership are (1) intent, (2) control, and (3) profit sharing. Id. at 994. Naturally, these factors apply to determining joint ventures as well. Duggins, 632 So.2d at 428.

1. Intent
¶ 47. Intent must be established by the proof. Smith, 593 So.2d at 994. The evidence of intent to form a joint venture is Braddock's testimony that Gallagher, Grenfell, Sledge and Schwartz were joint venturers, and Gallagher's admission that they were joint venturers in prior rounds of settlements with Manufacturer over liability for the exact same product. Evidence also existed that Gallagher and Becnel maintained that Gallagher was unsure as to whether he could be a contracting party with Becnel, after Becnel fired the Mississippi attorneys, including Grenfell, Sledge and Schwartz. This evidence is probative of the fact that Gallagher was breaching fiduciary duties by contracting solely with Becnel, without including Grenfell, Sledge and Schwartz. Indeed Gallagher concedes, as he must, that fiduciary duties are owed to fellow joint venturers. *51 Gallagher maintained that the prior joint ventures in Phases I and II settlements with Manufacturer had since ceased, and he specifically denied any such intent in this particular case. Nevertheless, he admitted to being bound by the seven percent administrative contract between Braddock and Grenfell, Sledge and Schwartz in the instant round of settlement.

2. Control
¶ 48. There was evidence that Gallagher, Grenfell, Sledge, and Schwartz had joint control over these particular cases. Gallagher was the one negotiating with Manufacturer and handling the problems directly with Braddock. Grenfell, Sledge and Schwartz had a contract with Braddock to handle the administrative work on all the cases in exchange for seven percent of their attorney fees. Gallagher likewise paid Goss six percent of his fee to handle administrative work on Gallagher's end. The evidence showed that Grenfell, Sledge collected the cases from Braddock and delivered them to Gallagher. On at least one occasion, Gallagher jointly corresponded with Braddock and Grenfell, Sledge on the cases. Gallagher's June 21, 2001 letter stated, "[i]t looks like these cases are going to be pulled from our settlement."

3. Profit Sharing
¶ 49. Profit sharing is the most important factor in the partnership analysis. Century 21 Deep S. Props., Ltd. v. Keys, 652 So.2d 707, 715 (Miss.1995). It is the essential element in a partnership. Smith, 593 So.2d at 994. The UPA distinguishes between sharing in the profits and sharing in gross receipts. Miss.Code Ann. § 79-12-13 (Rev.2001). "The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived." Miss.Code Ann. § 79-12-13(3) (Rev.2001). "The receipt by a person of a share of the profits is prima facie evidence that he is a partner. . . ." Miss.Code Ann. § 79-12-13(4) (Rev.2001) (emphasis added). Profit is gross return minus expenses.
¶ 50. Braddock and Gallagher testified that Gallagher split the forty percent fee in this case, one-third to Gallagher, one-third to Grenfell, Sledge and one-third to Schwartz. The transmittal letters wherein Gallagher mailed the shares to Grenfell, Sledge and Schwartz were also entered in evidence. Gallagher testified that he was to pay Goss six percent out of his share for administrative work done on the settlement. In past ventures, Gallagher, Grenfell, Sledge and Schwartz all contributed equally to this six percent fee. Gallagher also testified that Grenfell, Sledge and Schwartz paid Braddock seven percent out of their respective shares for like work. The reason Grenfell, Sledge and Schwartz no longer wanted to share in paying the Goss expense was because they were responsible for paying the Braddock expense. Again, Gallagher admits that this seven percent contract binds him, and he points to Grenfell, Sledge and Schwartz's satisfaction of that contract as likewise absolving him. Thus the undisputed evidence was that Gallagher, Grenfell, Sledge and Schwartz shared in the profits in the subject cases. This proof alone was sufficient for Braddock to prove its prima facie case of a joint venture to settle the cases with Manufacturer. Since Braddock offered proof as to all three factors, he more than satisfied his claim that Gallagher, Grenfell, Sledge and Schwartz were joint venturers in the Phase III round of settlement with Manufacturer.
¶ 51. Where a joint venture exists, its members are bound by the acts of the other members acting in the course and scope of the joint venture. Duggins, 632 *52 So.2d at 427. See also Miss.Code Ann. § 79-12-17 (Rev.2001). The evidence showed that Schwartz entered the sixty forty fee split agreement with Braddock in furtherance of its joint venture with Gallagher to settle cases with Manufacturer. Gallagher therefore is bound by the agreement entered on his behalf.
¶ 52. The evidence also showed that Gallagher breached this agreement when he did not talk Becnel out of firing the Mississippi attorneys and then entered an agreement with Becnel on the cases through Goss. The evidence showed that Gallagher drafted two agreements with Becnel. However, because he was concerned that he could not contract with Becnel on the cases, Gallagher had Goss do so. Goss then forward one hundred percent of the attorney fees away-sixty percent to Becnel and forty percent to Gallagher.
¶ 53. Braddock thus satisfied his burden of proof for breach of contract. We reverse the dismissal of the Gallagher defendants. By raising a Rule 41(b) motion to dismiss, a defendant does not waive its right to put on its case-in-chief, should the motion be denied. M.R.C.P. 41(b). Therefore, the proper remedy is to remand the case so the trial may continue, and the Gallagher defendants may have the opportunity to present their defense. Aronson, 828 So.2d at 756(¶ 14).

CONCLUSION
¶ 54. For the reasons set forth above, we affirm in part and reverse and remand in part. This case is remanded for further proceedings consistent with this opinion.
¶ 55. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS HEREBY AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.
NOTES
[1] Because this case involves the settlement of cases, the Court has granted the parties' request to enforce the confidentiality agreement between the clients, attorneys, and defendant manufacturer. Pursuant to the agreement, the names of the clients and the defendant manufacturer and the terms of settlement will remain confidential.
[2] Arledge was a member of Schwartz, who sued in his individual capacity.