# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-IA-01630-SCT

*SINGING RIVER MOB, LLC*

*v.*

*JACKSON COUNTY, MISSISSIPPI, AND
SINGING RIVER HEALTH SYSTEM*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/11/2019 |
| TRIAL JUDGE: | HON. D. NEIL HARRIS, SR. |
| TRIAL COURT ATTORNEYS: | WILLIAM LEE GUICE, III |
| | PATRICK R. BUCHANAN |
| | JOHN N. BOLUS |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JOHN N. BOLUS |
| | PETER C. ABIDE |
| ATTORNEYS FOR APPELLEES: | WILLIAM LEE GUICE, III |
| | MARIA MARTINEZ |
| | G. TODD BUTLER |
| | MALLORY K. BLAND |
| | PATRICK R. BUCHANAN |
| | MICHAEL E. BRUFFEY |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED AND REMANDED - 11/18/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2019-IA-01653-SCT

*SINGING RIVER HEALTH SYSTEM d/b/a OCEAN
SPRINGS HOSPITAL d/b/a  SINGING RIVER
HOSPITAL*

*v.*

*SINGING RIVER MOB, LLC, AN ALABAMA*
*LIMITED LIABILITY COMPANY*

DATE OF JUDGMENT:            10/11/2019
TRIAL JUDGE:                 HON. D. NEIL HARRIS, SR.
COURT FROM WHICH APPEALED:   JACKSON COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:     G. TODD BUTLER
                             MALLORY K. BLAND
                             PATRICK R. BUCHANAN
                             MICHAEL E. BRUFFEY
ATTORNEYS FOR APPELLEE:      PETER C. ABIDE
                             JOHN N. BOLUS
NATURE OF THE CASE:          CIVIL - CONTRACT
DISPOSITION:                 REVERSED AND REMANDED - 11/18/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     This matter comes before the Court as a consolidation of two appeals from a partial

summary-judgment order by the Chancery Court of Jackson County.  In the first appeal,

Singing River MOB, LLC, an Alabama Limited Liability Company (MOB), argues that the

leases between itself and Singing River Health System (SRHS) and the lease between

Jackson County, Mississippi (County), and SRHS are valid and that the chancery court erred

by finding the leases invalid under Mississippi's "minutes rule."  ***KPMG, LLP v. Singing***

***River Health Sys.***, 283 So. 3d 662, 669 (Miss. 2018).  In the second appeal, Jackson County

and SRHS contend that the chancery court erred by fashioning its own equitable relief as a

result of the first ruling.  MOB also raised its own objection as to the manner in which the

equitable relief was fashioned.  After careful review, we affirm and remand the partial

summary-judgment order of the Chancery Court of Jackson County as to the first appeal (No. 2019-IA-01630-SCT); however, we reverse and remand that order as to the second appeal (No. 2019-IA-01653-SCT).

**FACTS AND PROCEDURAL HISTORY**

¶2.    SRHS is a community hospital owned by Jackson County, established under community-hospital statutes and governed by a board of trustees. Miss. Code Ann. §§ 41-13-10 to -107 (Rev. 2018). The question before the Court involves the validity of certain leases between the County, SRHS and MOB.  At the heart of this case is a medical office building project dependant upon those leases.

¶3.    In the late 2000s, SRHS began to consider the prospect of building a medical office building on its medical campus, located in Pascagoula, Mississippi.  The purpose of this project would be to provide a modern medical space to serve the Pascagoula area that would, among other things, enhance the medical community's image, provide a competitive advantage in physician recruiting, add space for a neuroscience center and develop an outpatient center.  To that end, the parties came together for the purpose of forming the necessary leases for this project.

¶4.     On March 16, 2009, the Board of Supervisors of Jackson County (County Board) unanimously passed a resolution, included in its minutes, that authorized the execution of a lease of real property to SRHS for the purpose of constructing the medical office building. The resolution included certain conditions, including that SRHS may not encumber the property without approval by the County Board, that SRHS is authorized to sublease the

3

property to Johnson Development, LLC (Johnson Development), and that any other sublease of the property by SRHS must be approved by the County Board.

¶5. The County and SRHS then entered into their lease on March 26, 2009. The County Board ratified by resolution, included in the minutes, the execution of this lease on April 6, 2009. The April 6, 2009 minutes of the County Board also included, by attachment, this lease between the County and SRHS. Specifically, the minutes show that "the Lease Agreement, a copy of which is *attached* hereto, has been finalized and the Board of Supervisors desires to ratify said Lease Agreement and *spread upon its Minutes*." (Emphasis added.) This lease between the County and SRHS is known as the Prime Ground Lease.

¶6. The Board of Trustees of Singing River Health System (SRHS Board) also convened to discuss the medical office building project and, specifically, the terms of an agreement for such a project with MOB. The first board meeting was held on January 13, 2009, as shown on the minutes.[1] At this meeting, the SRHS Board received presentations regarding the medical office building project that included, among other things, the project's history and objectives, the project's financial impact, a review of the project's financing and leasing plans and a review of the SRHS campus plan that included specific placement of the medical office building. During this time, the members of the SRHS Board received the following summary of terms of the project, verbatim:

> **Structure.** Ground lease will be between SRHS and a Singing River MOB LLC. The LLC will make ground lease payments to SRHS. SRHS will be the master lessor of the building and will make occupancy lease payments to the

---

[1] We note that this discussion by SRHS's Board of the medical office building project occurred *before* the County Board authorized the lease between the County and SRHS.

4

LLC. The LLC will be completely owned by Johnson Development, LLC.

**Ground Lease Financials.**  Ground lease will be based on fair market value (FMV) of property.  Square footage quantity will be equal to the footprint of the building (estimated at 35,000 square feet).  Ground lease payments will not be less than $14,000 per year (based on value of $300,000 per acre and 6% return).  A 3% annual escalator will be applied.

**Occupancy Lease Financials.**  Will not exceed $19.50 per square foot per MOB space, $26.60 for radiology space and $28.50 for wellness center space. Expenses are estimated at $8.00 per square foot.  Lease is triple net with a 3% escalator.  Square footage lease rates based on buildout allowance of $85 per square foot for office space $130 for radiology and wellness areas.

**Exceeding buildout allowance.**  SRHS will have option of renegotiating occupancy lease rates or paying overage out of cash directly to the contractor/builder.

**Easements.**  SRHS will make sure that appropriate utilities are available "at the road".  The building budget includes any expenses related to getting utilities to the building site.  SRHS will also grant a parking easement to Singing River MOB, LLC. The building budget includes monies to construct parking and lighting.  SRH will maintain parking and lighting once constructed.

**Term.** Ground lease will have an initial term of 25 years.  SRHS will have the option of extending for another 25 year term.

**Reversion Terms.**  If SRHS chooses not to renew the ground lease for an additional 25 year term, SRHS will purchase the leasehold interest at FMV of building (based on appraisal of building).  If ground lease is extended for an additional 25 year term, at the end of the second 25-year term SRHS will be able to purchase the leasehold interest at 50% of FMV of building providing, that SRHS has been a majority tenant during the second ground lease period. Majority is defined as more then 50%.

**Expenses.**  Singing River MOB, LLC[] will "direct pay" all expenses (taxes, utilities, insurance, maintenance, etc.).

**Use of premises.**  There are a number of restrictions on how the building can be used.  For example, SRHS must give permission if the building is to ever be used as anything other than what the building will be used for when it

opens. Any physician occupying the building must be on staff with SRHS. Physicians cannot perform surgical procedures without SRHS consent.

**Right to sell.** Singing River MOB, LLC[] can sell or transfer its leasehold interest in the building. However, all "use of premises" restrictions follow any such sell or transfer. SRHS will have right of first refusal.

**Right of first refusal.** SRHS always has first right of refusal. Language included specifying that any offers must be within reasonable market ranges.

**Right to purchase.** Terms are being negotiated so that SRHS has the option of purchasing the building at FMV after a specified time period.

**Assingments/subleases.** Singing River MOB, LLC may sublease or assign any portion of the building not leased by SRHS (subject to ground lease terms and restrictions).

**Occupancy Lease Term:** One term at 25 years.

**Property Management.** SRHS can manage property internally or could contract with a firm such as Johnson Development, or other property management firm. Estimated expenses of $8.00 per sq. ft include allowance for property management services.

**Refurbishment Allowance.** Occupancy leases include $5.00 per square foot allowance for carpet, paint, wall covering etc. Allowance is available in 12.6 years and is indexed to the CPI.

**Major Mechanical Replacement.** Singing River MOB, LLC[] agrees to a one-time replacement of any major mechanical equipment due to failure during the occupancy lease term.

This summary provided the foundation of the sublease arrangement between SRHS and MOB that would ultimately result in a separate written Secondary Ground Lease and Occupancy Subleases. Under these leases, SRHS would receive ground payments from MOB. The purpose of these payments was for MOB to build the medical office building. In return, MOB would receive occupancy payments from SRHS for SRHS's use of the

medical office building. This January 13, 2009 summary was spread upon the minutes of the SRHS Board.

¶7. At this juncture, it is necessary to recognize two important facts. First, as indicated previously, while the SRHS Board discussed the medical office building project as it relates to discussions between SRHS and MOB, the record does not show that the SRHS Board minutes ever mentioned, or attached, the Prime Ground Lease between SRHS and the County. Second, Johnson Development was the original and intended sublessor in the medical office building project, particularly in the eyes of the County. This company's purpose was to develop the medical office building project by subleasing the property from SRHS that SRHS was in turn leasing from the County. As evidenced by the summary provided at the January 13, 2009 SRHS Board meeting, Johnson Development was ultimately replaced by MOB, one of the parties to this action. According to the record, "affiliates of Johnson Development established [MOB]." Specifically, James Milton Johnson was a manager of Johnson Development, LLC. The record then shows that Johnson Development, LLC, was the manager of Singing River MOB Manager, LLC, and Singing River MOB Manager, LLC, was shown as the manager of MOB. This change, however, was never explicitly approved by the County.

¶8. After the approval of these leases, the parties continued to develop the medical office building project. On October 28, 2009, the County issued an Estoppel Certificate to the lenders who financed the transaction between SRHS and MOB. On that same day, the SRHS Board's minutes show that the SRHS Board authorized the chief executive officer of SRHS,

7

Chris Anderson, "to execute and deliver any and all documents necessary to provide" for the Secondary Ground Lease and the Occupancy Subleases with MOB. Then, nearly a year later, on November 30, 2010, the Occupancy Leases were amended (i.e., Amended Occupancy Subleases). The amendments include, among other things, a change to the amount of rented square feet and the base rental amount. The Amended Occupancy Subleases, however, were not evidenced on the SRHS Board's minutes.[2]

¶9.     For nearly a decade, the County, SRHS, and MOB operated together with no apparent problem. On June 7, 2018, however, the County sued SRHS and MOB seeking a declaration that the leases were void or, alternatively, voidable. The County argued that the leases were void because SRHS and MOB failed to comply with the County's March 16, 2009 enabling resolution. Alternatively, the County contended the leases were voidable because "governing authorities may not bind their successors in office to contracts which take away the rights and powers conferred by law in the absence of statutory authority."

¶10.    In May of 2019, MOB answered the County. MOB denied that the leases were void or voidable and argued that the leases were valid. Then, SRHS answered the County, but SRHS also filed a cross-claim against MOB. In SRHS's answer and cross-claim, SRHS joined the relief requested by the County, that is, that the leases must be declared void or voidable. Essentially, SRHS additionally argued that the leases were void because they were not spread upon the minutes.

¶11.    A few months later, each party to this action filed a summary-judgment motion. On

_____

[2] The chief compliance officer of SRHS, Stephanie Taylor, kept the leases in her office.

8

October 11, 2019, the chancery court entered a partial summary-judgment order finding that the essential terms were not contained in the minutes. Specifically, the chancery court found that "two essential provisions of the leases, sub-leases and amended sub-leases that are not contained in either the minutes of the Jackson County Board of Supervisors or in the minutes of the SRHS Board of Trustees: (1) default provisions and (2) amended sub-lease provisions." Additionally, the chancery court found that "[t]he amended sub-lease provisions setting forth the amounts to be paid by SRHS to MOB are not contained in any minutes of SRHS Board of Trustees or the Jackson County Board of Supervisors, as required by law." For those reasons, the chancery court declared that the leases were void. This is the basis for the first interlocutory appeal.[3]

¶12. The chancery court did not stop there, however. Instead, the chancery court went on to order the sale of the medical office building from MOB to SRHS. To this end, the chancery court ordered an appraisal of the medical office building for the purpose of determining the fair market value and the fair market monthly rental rate of the medical office building. Accordingly, the chancery court directed SRHS to pay MOB $17,800,000 for the fair market value of the property and $140,104.08 for the fair market monthly rental rate for the month of November 2019. The chancery court reasoned that "the unjust enrichment law and the principles of equity" required this remedy. This is the basis for the second interlocutory appeal.

---

[3] While MOB now argues for the validity of the leases, we note that in MOB's brief in opposition to summary judgment, MOB conceded that the validity of the Secondary Ground Lease and the Occupancy Subleases depends upon the validity of the Prime Ground Lease.

¶13. No party was satisfied with the chancery court's order. Thus, two interlocutory appeals of that order were initiated, and after granting both, this Court consolidated the two appeals.

## ISSUES PRESENTED[4]

¶14. On appeal, the parties have raised the following issues:

    I.      Whether the chancery court correctly applied the minutes rule.

    II.    Whether the chancery court correctly applied the equitable estoppel doctrine.

    III.   Whether the chancery court correctly crafted an equitable remedy.

## STANDARD OF REVIEW

¶15. This Court reviews summary-judgment rulings de novo. *Dalton v. Cellular S., Inc.*, 20 So. 3d 1227, 1231 (Miss. 2009). Those rulings may only be affirmed when the record shows that "there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law." *U.S. Fid. & Guar. Co. of Miss. v. Martin*, 998 So. 2d 956, 962 (Miss. 2008) (citing *Germany v. Denbury Onshore, LLC*, 984 So. 2d 270, 275 (Miss. 2008)).

## DISCUSSION

**I.    Whether the chancery court correctly applied the minutes rule.**

¶16. The chancery court determined the leases to be invalid for failure to comply with Mississippi's long-held minutes rule. MOB contends that the minutes rule was satisfied and,

---

[4] This section reflects the questions raised by the parties on appeal, but the issues as stated here have been reworded for efficiency.

10

therefore, the chancellor erred. The primary issue here is whether the minutes rule was satisfied.

¶17. As recently as 2018, the minutes rule was analyzed by this Court in *KPMG, LLP v. Singing River Health Systems*, 283 So. 3d 662 (Miss. 2018). In *KPMG*, the Court recognized that

> For well over a century, this Court has consistently held that public boards speak only through their minutes and that their acts are evidenced solely by entries on their minutes. *See, e.g.*, *Wellness, Inc. v. Pearl River Cty. Hosp.*, 178 So. 3d 1287, 1290 (Miss. 2015) (board of trustees of community hospital must keep minutes of its official business and speaks and acts only through its minutes); *Ladner v. Harrison Cty. Bd. of Supervisors*, 793 So. 2d 637, 639 (Miss. 2001) (board of supervisors can only act through its minutes); *Nichols v. Patterson*, 678 So. 2d 673, 677 (Miss. 1996) (boards of supervisors' contracts, and every other substantial action taken by them, must be evidenced by entries on their minutes and can be evidenced in no other way); *Bruner v. Univ. of S. Miss.*, 501 So. 2d 1113, 1116 (Miss. 1987); *Thompson v. Jones Cty. Cmty. Hosp.*, 352 So. 2d 795, 796 (Miss. 1977) (sustaining motion to dismiss because contract was not entered on minutes and enough of the substance of the contract was not contained in the minutes for a determination of the liabilities and obligations of the contracting parties without evidence dehors the minutes); *Miss. State Highway Comm'n v. Sanders*, 269 So. 2d 350 (Miss. 1972) (state commission bound only by affirmative action evidenced by an entry on its minutes and one member's individual acts not binding on the commission); *Cheatham v. Smith*, 229 Miss. 803, 92 So. 2d 203 (1957) (boards of trustees of school districts can act only through their minutes); *Bd. of Supervisors of Adams Cty. v. Giles*, 219 Miss. 245, 68 So. 2d 483 (1953) (when the board of supervisors' minutes evidenced what the board did and "showed the substantial provisions of the contract," the minutes rule was satisfied); *Martin v. Newell*, 198 Miss. 809, 23 So. 2d 796 (1945) (validity of the contract required an entry of an order on the minutes of the boards); *Smith Cty. v. Mangum*, 127 Miss. 192, 89 So. 913 (1921) (board of supervisors of a county can only enter into an express contract by an order spread upon its minutes); *Marion Cty. v. Foxworth*, 83 Miss. 677, 36 So. 36 (1904) (contract entered by board of supervisors evidenced on minutes when stated with certainty and full detail and stated with clearness the price to be charged for each specific portion); *Bridges & Hill v. Bd. of Supervisors of Clay Cty.*, 58 Miss. 817 (1881) (boards of supervisors bind counties only when

11

acting within their range of authority and when their contracts are evidenced by the entries on their minutes).

283 So. 3d at 669. The Court went on to say that "[l]ike any other public board, a board of trustees of a community hospital is required to 'keep minutes of its official business[.]' Miss. Code Ann. § 31-13-35(3) (Rev. 2013)." *Id.* at 669-70 (second alteration in original).

¶18. It is noted that, "the entire contract need not be placed on the minutes." *Id.* at 670 (quoting *Wellness, Inc.*, 178 So. 3d. at 1290-91); *see Thompson*, 352 So. 2d at 797 (holding "that a contract with a public board may be enforced if enough of the terms and conditions of the contract are contained in the minutes for determination of the liabilities and obligations of the contracting parties without the necessity of resorting to other evidence"). "However, it is the responsibility of the entity contracting with the Board itself, to ensure that the contract is legal and properly recorded on the minutes of the board." *KPMG*, 283 So. 3d at 670 (internal quotation marks omitted) (quoting *Wellness, Inc.*, 178 So. 3d at 1291).

> A. *Whether the minutes rule was satisfied as to the Prime Ground Lease.*

¶19. The Prime Ground Lease established the terms of the agreement between the County and SRHS for the purpose of building a medical office building. The County Board attached this lease to its minutes when the County Board executed the lease with SRHS. The record, however, does not show SRHS's Board, likewise, included the Prime Ground Lease in its minutes.

¶20. A public board cannot act without evidencing its acts upon its minutes. *Wellness, Inc.*, 178 So. 3d at 1290 ("A community hospital board of trustees, as does any public board

in the State of Mississippi, speaks and acts only through its minutes." (citing ***Thompson***, 352 So. 2d at 796)). "Furthermore . . . the importance of the public policy involved will be the overriding factor in such disputes even when 'the rule may work an apparent injustice.'" ***Butler v. Bd. of Supervisors for Hinds Cnty.***, 659 So. 2d 578, 582 (Miss. 1995) (quoting ***Colle Towing Co. v Harrison Cnty.***, 213 Miss. 442, 57 So. 2d 171, 172 (1952)).

¶21.    We hold that the minutes rule was not satisfied because SRHS Board failed to include, by attachment or otherwise, the Prime Ground Lease within its minutes.[5]  Therefore, the chancellor did not err by determining that the Prime Ground Lease in this case  was void and thus invalid. [6]

¶22.    We respectfully disagree with Justice Griffis's contention that the chancery court inappropriately considered the application of the minutes rule to the Prime Ground Lease. CDIP Op. ¶¶ 50-53.  Justice Griffis is concerned that the chancery court's invalidation of the

---

[5] Justice Griffis states that "[t]he fact that SRHS did not include the Prime Ground Lease in its minutes does not give Jackson County the right to declare the Prime Ground Lease to be void."  CDIP Op. ¶ 69.  However, the County, as a contracting party, has the same right to claim the invalidity of a lease for failure to be included in the minutes as would a private citizen.  Further, there is nothing in the SRHS Board minutes indicating that they ever agreed to the Prime Ground Lease.

[6] Justice Griffis states that "I can find no cases that discuss or support the finding of an 'invalid' contract.  The cases cited by the majority do not rule that the relevant contracts were void or invalid."  CDIP Op. ¶ 68.  We respectfully point the dissent's attention to ***Wellness, Inc. v. Pearl River County Hospital***, 178 So. 3d at 1290 (holding that an arbitration agreement is *not valid* because the hospital board minutes did not include sufficient reference to liabilities and obligations to mediate or arbitrate).  *See also* ***Rawls Springs Util. Dist. v. Novak***, 765 So. 2d 1288, 1292 (Miss. 2000) (holding that an agreement not included in the minutes of a public board "render[s] the agreement *void*" (emphasis added)).

13

Prime Ground Lease was not requested in the County's written summary-judgment motion.[7]

While we agree that our review of summary judgment is limited to what the parties presented before the chancery court, such limitation is not restricted merely to the written motions. Indeed, in its memorandum in support of its motion for summary judgment, the County requested, albeit for different reasons, that the chancery court invalidate the Prime Ground Lease for failure to comply with the minutes rule. The County even cites *KPMG*, 283 So. 3d 662, in support of its argument. Also, MOB had the opportunity to respond to this issue and did so in its own memorandum in support of its motion for summary judgment.[8]

¶23. Furthermore, the issue of whether the parties ever requested that the chancery court determine the validity of the Prime Ground Lease under the minutes rule has now, for the first time, been raised by Justice Griffis. While we conclude that the issue of whether the Prime Ground Lease was valid under the minutes rule was raised by the parties at the summary-judgment stage, nevertheless, the chancery court "will not be put in error on appeal

[7] In focusing on whether the parties ever requested a determination of the validity of the Prime Ground Lease under the minutes rule, Justice Griffis states that "Jackson County's complaint does not allege or claim that the Prime Ground Lease was void under the minutes rule. The majority concedes this is correct." CDIP Op. ¶ 49. We disagree. We do concede, however, that the County never used the term "minutes rule" in its complaint.

[8] Justice Griffis deems our review of this, curiously, to be an amendment to the Mississippi Rules of Civil Procedure. *See* CDIP Op. ¶ 56. It is not, of course. Parties having matters decided by agreement, of which they had adequate notice, is nothing new. This includes matters brought up in a memorandum and argued by agreement. This procedure has previously been addressed by the Court of Appeals. *See Estate of Turner v. Town of Pharmacy & Gifts, LLC*, 310 So. 3d 1229, 1233 n.5 (Miss. Ct. App. 2021) (citing *Thornton v. Big M Transp. Co.*, 146 So. 3d 393, 398 (Miss. Ct. App. 2014)) (holding that a trial court may consider a matter raised in a rebuttal memorandum in support of a motion for summary judgment when the other side has the opportunity to respond to such matter).

14

for a matter not presented to it for decision." ***Mills v. Nichols***, 467 So. 2d 924, 931 (Miss. 1985) (citing ***Nat. Father v. United Methodist Child.'s Home***, 418 So. 2d 807 (Miss. 1982)). For reasons stated above, we do not agree with the assertions of Justice Griffis that the chancery court acted *sua sponte*. Nevertheless, we do additionally note that "a trial court 'may not grant summary judgment *sua sponte* on grounds not requested by the moving party' without notice and an opportunity to respond." ***Peavey Elecs. Corp. v. Baan U.S.A., Inc.***, 10 So. 3d 945, 956 (Miss. Ct. App. 2009) (quoting ***Baker v. Metro. Life Ins. Co.***, 364 F.3d 624, 632 (5th Cir. 2004)). Such *sua sponte* action by a trial court, however, is acceptable when the "losing party was on notice that she had to come forward with all her evidence." ***Id.*** (internal quotation mark omitted) (quoting ***Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.***, 932 F.2d 442, 445 (5th Cir. 1991)).

¶24. Here, notice was clearly provided and the parties, without doubt, argued the issue. Further, while the parties disagree as to whether the chancery court's ruling was correct, they did not, at the trial court or on appeal here, argue the right of the chancery court to decide the issue. No one objected to the chancery court's ruling on whether the Prime Ground Lease violated the minutes rule. In fact, by their action of presenting the issue and not objecting to its determination, the parties agreed that this was an issue for the chancery court to decide. Therefore, since no objection was made below, and none has been made to this Court, as to the issues being heard of whether the Prime Ground Lease was valid under the minutes rule, and whether the parties had notice as to that issue, we cannot now put the chancery court in error. ***Mills***, 467 So. 2d at 931; ***City of Jackson v. Jordan***, 202 So. 3d 199, 206 (Miss. 2016)

15

("We find the city waived the issue by failing to object properly at trial[.]"); ***Peavey Elecs Corp.***, 10 So. 3d at 956.

> B.      *Whether the minutes rule was satisfied as to the remaining leases between SRHS and MOB.*

¶25.    The remaining leases in this case—the Secondary Ground Lease, the Occupancy Subleases and the Amended Occupancy Subleases—are between SRHS and MOB. As indicated previously, we hold that the minutes rule was not satisfied as to the Prime Ground Lease. Because of this, we conclude that the remaining leases are also invalid.[9] However, in the interest of completeness, we provide further analysis of the remaining leases.

¶26.    As established, these additional leases generally provide the terms for MOB's ground payments to SRHS and also SRHS's occupancy payments to MOB. These leases were not spread upon the minutes in their entirety.

¶27.    "We therefore conclude that a contract with a public board may be enforced if enough of the terms and conditions of the contract are contained in the minutes for determination of the liabilities and obligations of the contracting parties without the necessity of resorting to other evidence." ***Thompson***, 352 So. 2d at 797.

¶28.    When determining whether the minutes rule was satisfied, the public board's minutes is the only evidence that may be considered. *See **id.*** (restricting the evidence for a minutes rule determination to the public board's minutes). Essentially, when analyzing whether the leases between SRHS and MOB satisfy the minutes rule, the only minutes available to

---

[9] Again, even MOB concedes that the validity of the leases between itself and SRHS depend upon the validity of the Prime Ground Lease.

16

consider are from two of the SRHS Board's meetings: the January 13, 2009 meeting and the October 28, 2009 meeting. Regarding the minutes from the October 28, 2009 meeting, these minutes only indicate that the SRHS Board approved a resolution authorizing the SRHS chief executive officer to execute the necessary documents to consummate the Secondary Ground Lease and the Occupancy Subleases. These minutes provide no discussion as to the terms or the obligations of the Secondary Ground Lease or the Occupancy Subleases. That leaves only the minutes from January 13, 2009, to consider.

¶29. The SRHS Board's minutes from January 13, 2009, include a summary of terms upon which the leases between SRHS and MOB are based. It is from these minutes that we must determine whether these leases satisfy the minutes rule. This Court holds that these leases are invalid, even under the ***Thompson*** language.[10]

¶30. ***Thompson*** requires that the minutes reveal the parties' "liabilities and obligations," or the essential terms, under the leases. ***Thompson***, 352 So. 2d at 797. One of these obligations is MOB's obligation to make ground payments to SRHS for MOB's use of the land that the medical office building sits on. Specifically, this obligation is outlined in the January 13, 2009 minutes and provides the following:

> Ground lease will be based on fair market value (FMV) of property. Square footage quantity will be equal to the footprint of the building (estimated at 35,000 square feet). Ground lease payments will not be less than $14,000 per year (based on value of $300,000 per acre and 6% return). A 3% annual escalator will be applied.

The fatal problem with this term is that the purpose of the minutes rule is not satisfied.

---

[10] On January 13, 2009, the SRHS Board was provided a summary of the terms of the leases between SRHS and MOB. This summary is provided verbatim above.

17

The Court previously described the purpose of the minutes rule as follows:

(1) That when authority is conferred upon a board, the public is entitled to the judgment of the board after an examination of a proposal and a discussion of it among the members to the end that the result reached will represent the wisdom of the majority rather than the opinion or preference of some individual member; and

(2) that the decision or order when made shall not be subject to the uncertainties of the recollection of individual witnesses of what transpired, but that the action taken will be evidenced by a written memorial entered upon the minutes at the time, *and to which the public may have access to see what was actually done*.

*KPMG*, 283 So. 3d at 673 (quoting *Wellness, Inc.*, 178 So. 3d at 1293). Looking at SRHS's Board minutes, however, neither the Board nor the public can calculate the exact payment MOB must make to SRHS, and, thus, the public cannot "see what was actually done." *Id.*

¶31. Specifically, the term in question provides that "[the g]round lease will be based on [the] fair market value (FMV) of [the] property" and "[g]round lease payments will not be less than $14,000 per year[.]" The term "fair market value" is subjective, and the public is given no guidance on how it was to be determined. Facially, this term cannot even provide the pubic a rough estimate of what MOB would pay SRHS. Even more so, this Court has invalidated a contract in which the minutes provided similar language. In *Wellness, Inc.*, the minutes provided that twelve rooms would be renovated "for a cost of less than $5,000.00 per room." 178 So. 3d at 1291 (internal quotation marks omitted). Like the amount in *Wellness, Inc.*, the amount here provides the public no specificity as to what the actual payment will be.[11]

_____

[11] This term in *Wellness, Inc.*, reflects a maximum amount; however, the term in the instant case reflects a minimum amount. *Id.* Accordingly, the maximum amount in

18

¶32. Here, MOB's ground payment to SRHS is an obligation under the leases. *See Thompson*, 352 So. 2d at 797. It is impossible, however, for the public to calculate the ground payment MOB must make to SRHS by solely looking at the minutes. Thus, the public cannot "see what was actually done" by looking at the minutes. *KPMG*, 283 So. 3d at 673 (emphasis omitted). Further, "the importance of [this] public policy involved will be the overriding factor in such disputes even when the 'rule may work an apparent injustice.'" *Butler*, 659 So. 2d at 582 (quoting *Colle Towing Co.*, 57 So. 2d at 172). Therefore, we conclude that the minutes rule here is not satisfied because the public cannot calculate the ground payment MOB must make to SRHS. The chancery court did not err. [12]

## II. Whether the chancery court correctly applied the equitable estoppel doctrine.

¶33. MOB argues that the chancery court erred by not finding that the County and SRHS are equitably estopped from challenging the validity of the leases. Specifically, MOB contends that equitable estoppel applies because of MOB's reliance on certain representations that the leases were valid. These representations include, among other things, that the SRHS Board authorized its chief executive officer to execute documents involving the medical office building project; that a letter signed by SRHS's attorney opined

---

*Wellness, Inc.*, is more protective of the public.

[12] Also, as previously indicated, the chancery court found that the leases in this case were invalid because the essential terms of the leases were not contained in the minutes of the public boards involved. In making this determination, the chancery court specifically found that the default provisions and the Amended Occupancy Subleases were not contained in the minutes. After reviewing the minutes, we conclude that the chancery court is correct. These provisions are not mentioned in the minutes.

19

the leases were valid and enforceable; that the County issued estoppel certificates validating the medical office building project; and also that the Chancery Court of Hinds County validated bonds that were used to finance the medical office building project. In relying on these representations, MOB asserts that it changed its position to its detriment, specifically, by taking out debt for the project. For that reason, MOB argues that the County and SRHS should be equitably estopped from challenging the validity the leases. This Court, however, concludes that the chancery court was correct not to apply equitable estoppel.

¶34. In **KPMG**, the Court held that "a public board may not be bound by estoppel unless the agreement at issue is duly and lawfully entered upon its minutes." 283 So. 3d at 675-76 (citing **Butler**, 659 So. 2d at 582). Also, in **Colle Towing Co.**, the Court held that if the minutes rule is not satisfied, "a county is not liable on a *quantum meruit* basis even though it may have made partial payments on a void oral contract, and, moreover, that in such case there is no estoppel against the county." 57 So. 2d at 172 (citing **Groton Bridge & Mfg. Co. v. Bd. of Supervisors of Warren Cnty.**, 80 Miss. 214, 21 So. 711, 712 (1902)).

¶35. Therefore, because the minutes rule was not satisfied, this Court concludes that the chancery court did not err by declining to apply equitable estoppel.

**III.    Whether the chancery court correctly applied an equitable remedy.**

¶36. While the chancery court correctly found that the minutes rule was not satisfied, it went on to fashion its own equitable remedy by ordering MOB to sell the medical office building to SRHS. The chancery court deemed that "unjust enrichment law and the principles of equity" required this remedy. Such an equitable remedy, however, was neither

20

pleaded nor briefed before the chancery court.

¶37. Indeed, MOB requested in its answer that "if the [chancery] court finds that the Prime Ground Lease is void or voidable, the [chancery] court will enter a judgment ordering SRHS to purchase . . . MOB's interest in the premises *pursuant to the [Secondary Ground Lease]*." (Emphasis added.) MOB requested this relief "pursuant to" the Secondary Ground Lease. Such relief, as requested, could never be granted pursuant to the Secondary Ground Lease because the chancery court itself determined that lease void. Moreover, despite the chancery court's own effort to remedy what it perceived as unjust enrichment, MOB never pled unjust enrichment explicitly.[13]

¶38. "It is well-settled law in Mississippi that [parties] are bound by what is alleged[.]" *Powell v. Clay Cnty. Bd. of Supervisors*, 924 So. 2d 523, 527 (Miss. 2006). Under the Mississippi Rules of Civil Procedure, however, "[w]hen issues not raised by the pleadings are tried by expressed or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Miss. R. Civ. P. 15(b). Even so, "[i]n order to determine that an issue was tried by implied consent both parties must be able to detect that a new issue was being litigated." *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 52 (Miss. 1998) (citing *McCarty v. Kellum*, 667 So. 2d 1277, 1283-84 (Miss. 1995)).

¶39. Here, the parties neither pleaded nor briefed this issue. Furthermore, the County and SRHS specifically objected to the relief granted, and MOB objected to the manner in which the relief was determined. Therefore, we conclude that the chancery court erred by

---

[13] Additionally, the record indicates that MOB itself recognized in its brief opposing summary judgment that "MOB has not requested relief in quantum meruit at this time[.]"

21

fashioning this remedy.

## CONCLUSION

¶40.    As to the first appeal (No. 2019-IA-01630-SCT), the Prime Ground Lease between the County and SRHS was not mentioned in the SRHS Board's minutes and is, therefore, invalid. Additionally, the essential terms of the remaining leases, those leases between SRHS and MOB, were not properly contained within the minutes of the SRHS Board and are, likewise, invalid. Therefore, this Court concludes that the chancery court did not err in its minutes rule application, and we affirm and remand the decision of the chancery court.[14]

¶41.    Also as to the first appeal (No. 2019-IA-01630-SCT), equitable estoppel is not a proper course of action when the minutes rule has not been satisfied. *See KPMG*, 283 So. 3d at 675-76. For this reason, this Court also concludes that the chancery court did not err by denying relief based in equitable estoppel, so we affirm and remand the judgment of the chancery court.

¶42.    As to the second appeal (No. 2019-IA-01653-SCT), however, we conclude that the chancery court did err by fashioning its own equitable remedy by ordering the sale of the medical office building. This remedy was not requested by any party below. *See Par Indus., Inc.*, 708 So. 2d at 52 (citing *McCarty*, 667 So. 2d at 1283-84). Therefore, this Court

---

[14] The minutes rule produces harsh results. *See Urb. Devs. LLC v. City of Jackson, Miss.*, 468 F.3d 281, 300 (5th Cir. 2006) ("The *Colle Towing* case is often cited as an example of the harsh application of Mississippi's spread on minutes requirement, equity notwithstanding."). We have, however, repeatedly provided the simple solution: if you deal with public boards, you must assure that your contracts are recorded in the board minutes. *See KPMG*, 283 So. 3d at 669; *see also Wellness, Inc.*, 178 So. 3d at 1290; *Thompson*, 352 So. 2d at 796.

reverses the judgment of the chancery court to the extent it fashioned its own equitable remedy and remands the case for further proceedings accordingly.

¶43.   As this matter involves partial summary judgment, we note that we have resolved the declaratory-judgment action as to the validity of the leases.  We make no finding as to any relief to which the parties may be entitled to on remand in this cause or pursuant to a separate action.

¶44.   **AS TO 2019-IA-01630-SCT: AFFIRMED AND REMANDED. AS TO 2019-IA-01653-SCT: REVERSED AND REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM AND ISHEE, JJ., CONCUR.  GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.**

**GRIFFIS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶45.   The most fundamental principle in considering motions for summary judgment was announced by this Court in the seminal case of ***Brown v. Credit Center, Inc.***, 444 So. 2d 358, 363 (Miss. 1983). There, we held that "[s]ummary judgments, in whole or in part, should be granted with great caution." ***Id.***  Essential to this principle is that counsel, the trial court, and this Court must follow the procedures established by Rule 56 of the Mississippi Rules of Civil Procedure.

*Standard of Review*

¶46.   This Court's review of the chancellor's order granting partial summary judgment is de novo.  ***Bennett v. Highland Park Apartments, LLC***, 170 So. 3d 450, 452 (Miss. 2015). This Court may affirm only if the record shows "there is no genuine issue as to any material

23

fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c).

A de novo review "means that the case shall be tried the same as if it had not been tried before, and the court conducting such a trial may substitute its own findings and judgment for those of the inferior tribunal from which the appeal is taken." ***Cal. Co. v. State Oil & Gas Bd.***, 200 Miss. 824, 838–39, 27 So. 2d 542, 544 (1946) (citing ***Knox, Att'y Gen. v. L.N. Dantzler Lumber Co.***, 148 Miss. 834, 114 So. 873, 876 (1927)).

¶47.   This Court's review of the chancellor's decision to grant a partial summary judgment should be conducted just as if this Court were sitting initially as the chancellor. This Court must look at the same pleadings, motions, and evidentiary material that the chancellor considered.[15]

*De Novo Review of Motions for Summary Judgment*

¶48.   Rule 56(c) provides that "[t]he judgment sought shall be rendered . . . if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law*." M.R.C.P. 56(c) (emphasis added). Rule 56 does not authorize this Court or any court to grant a summary judgment sua sponte.

¶49.   Jackson County's summary-judgment motion asks for a judgment as a matter of law on the particular grounds that "the lease between Jackson County and SRHS [is] *void for the*

---

[15]   The majority states that this Court's review is limited to the objections of the parties when the summary-judgment motion was before the chancellor. Maj. Op. ¶ 23. The cases cited are simply not applicable here. ***Mills v. Nichols***, 467 So. 2d 924, 931 (Miss. 1985) considered the appeal from a jury verdict. ***City of Jackson v. Jordan***, 202 So. 3d 199, 202 (Miss. 2016) considered the appeal of a final judgment and denial of a motion for reconsideration.

*failure to comply with the resolution of Jackson County dated March 16, 2009* and that Jackson County is entitled to possession of the land in question." (Emphasis added.) The motion does not state that Jackson County moves the court for a judgment as a matter of law on the particular ground that the Prime Ground Lease was void under the minutes rule. Also, Jackson County's complaint does not allege or claim that the Prime Ground Lease was void under the minutes rule. The majority concedes this is correct.[16]

¶50.    SRHS's summary-judgment motion asks for a judgment as a matter of law on the particular grounds that the October 28, 2009 lease agreements between SRHS and MOB were void. The motion does not even mention the Prime Ground Lease. And the motion certainly does not ask the court for a judgment as a matter of law that the Prime Ground Lease was void, *for any reason whatsoever*. Also, SRHS's pleadings include no allegations or claims that the Prime Ground Lease was void. The majority concedes this is correct. Clearly, there were no grounds to grant a partial summary judgment in favor of SRHS.

¶51.    The first reason I would deny the summary judgments is based on Rules 7(b)(1) and 56(c) of the Mississippi Rules of Civil Procedure. I cannot, and no court should, grant a partial summary judgment on an issue not requested in the summary-judgment motion under consideration.

¶52.    Rule 7(b)(1) *requires* "[a]n application to the court for an order shall be by motion

---

[16] Interestingly, in footnote 7, the majority states, "[w]e disagree. We do concede, however, that the County never used the term 'minutes rule' in its complaint." Maj. Op. ¶ 22 n.7. A review of Jackson County's complaint and motion will show that "minutes rule" is not mentioned in the complaint or the motion. The majority offers no explanation because there is none; yet the majority simply disregards it as an error that it deems is not meaningful or fundamental.

25

which . . . shall be made in writing, *shall state with particularity the grounds therefor . . . .*" M.R.C.P. 7(b)(1) (emphasis added).

¶53. Neither Jackson County's nor SRHS's summary-judgment motions applied to the court for a judgment as a matter of law on the particular ground that the Prime Ground Lease was void under the minutes rule as the majority finds. The majority concedes this is correct.

¶54. Despite the fact that this reason was not raised in the motions, the majority concludes that the validity of the Prime Ground Lease under the minutes rule was properly raised because it was argued in Jackson County's memorandum. The Rules of Civil Procedure do not authorize an application to the court for an order for summary judgment based on what is in a memorandum. A motion is required consistent with Rule 7(b)(1).

¶55. In *Thornton v. Big M Transportation Co.*, the Court of Appeals considered a summary-judgment motion in which the factual and legal issues were not clearly stated as the rules require. *Thornton v. Big M Transp. Co.*, 146 So. 3d 393, 398 (Miss. Ct. App. 2014). The court then cited *Estate of Jackson v. Mississippi Life Insurance Co.*, 755 So. 2d 15, 22 (Miss. Ct. App. 1999), in which the court held:

> The local rule stated that failure to submit the itemization or other required documents "may result in the denial of the motion" or other appropriate sanction. Another court stated that the purpose of a similar rule was for "laying out the material facts in dispute clearly for a district court that is swamped with an overwhelming number of civil and criminal dispositive motions." *The rule also avoids* "*the recurrent problem of ferreting through the record and the specter of district judges being unfairly sandbagged by unadvertised factual issues.*" *Somewhat colorfully this has been called an "anti-ferreting rule."*

*Est. of Jackson v. Miss. Life Ins. Co.*, 755 So. 2d 15, 22 (Miss. Ct. App. 1999) (emphasis added) (citations omitted). The rules of civil procedure are clear and mean what they say.

26

Motions for summary judgment must state with particularity the grounds that support the motion; otherwise, the motion should be denied. The Court of Appeals' willingness to accept less than what is required by the rules is not authorized or acceptable practice under the rules of civil procedure. Under the majority's decision today, the "anti-ferreting rule" has been rescinded.

¶56. This Court has never ruled as the majority does today. If the members of this Court want to amend the Mississippi Rules of Civil Procedure, then we should do just that. The record does not support the conclusion that the matter was presented and decided by agreement. Nevertheless, this case will stand for the legal principle that the rules of civil procedure do not have to be followed. This is dangerous precedent indeed. This Court is "charged with considering all law bearing on this subject . . . . And this Court, 'as a matter of institutional necessity and constitutional imperative, is the ultimate expositor of the law of this state [and] . . . on matters of law, it is our job to get it right.'" *Pascagoula Sch. Dist. v. Tucker*, 91 So. 3d 598, 604 (Miss. 2012) (alterations in original) (quoting *UHS-Qualicare, Inc. v. Gulf Coast Cmty. Hosp., Inc.*, 525 So. 2d 746, 754 (Miss. 1987)). This Court must enforce the rules of civil procedure as written.

¶57. Because I find that neither Jackson County's nor SRHS's motions for summary judgment applied to the Court for a judgment as a matter of law on the particular grounds that the Prime Ground Lease was void under the minutes rule, I would deny their motions for summary judgment and reverse and remand this case for further proceedings.

¶58. If Jackson County and SRHS want a partial summary judgment on the particular

27

grounds that the Prime Ground Lease is void under the minutes rule, then they can simply file a motion that says exactly that; they cannot hide it in a memorandum. This Court should enforce Rules 7(b)(1) and 56(c), not ignore them.

¶59. The second reason I would deny the summary-judgment motions is that I do not find Jackson County is entitled to a judgment as a matter of law that the Prime Ground Lease is void under the minutes rule.

¶60. SRHS's pleadings and motions neither pled nor requested a finding that the Prime Ground Lease was void. Thus, if we consider SRHS's motion alone, summary judgment is not appropriate in favor of SRHS holding that the Prime Ground Lease is be void under the minutes rule or for any other reason.

¶61. Jackson County's summary-judgment motion is the only possible basis to grant a partial summary judgment. Despite the fact that the motion does not make such claim, the majority's de novo review finds the Prime Ground Lease to be void as a matter of law based on Jackson County's complaint and memorandum. However, the majority states:

> The Prime Ground Lease established the terms of the agreement between the County and SRHS for the purpose of building a medical office building. The County Board attached this lease to its minutes when the County Board executed the lease with SRHS. The record, however, does not show SRHS's Board, likewise, included the Prime Ground Lease in its minutes.

Maj. Op. ¶ 19.

¶62. There is no dispute of fact or law that the Prime Ground Lease *was actually recorded in the minutes of* Jackson County's Board. Thus, under the cases cited by the majority, the Prime Ground Lease is enforceable against Jackson County because it was properly recorded

28

in Jackson County's minutes. The majority recognizes this but, in footnote 5, asserts that Jackson "County, as a contracting party, has the same right to claim the invalidity of a lease for failure to be included in the minutes as would a private citizen. Further, there is nothing in the SRHS Board minutes indicating that they ever agreed to the Prime Ground Lease." Maj. Op. ¶ 21 n.5. Yet again, the majority cites no authority for such proposition. It seems to be contrary to the public policy behind the minutes rule to allow a public entity that recorded the contract in its minutes to escape any obligation under the contract because it is not in the minutes of another public entity. The majority cites no authority that supports this conclusion.

¶63. The majority argues that Jackson County's reference to *KPMG, LLP v. Singing River Health System*, 283 So. 3d 662, 664 (Miss. 2018), was sufficient to raise and grant partial summary judgment under the minutes rule. In *KPMG*, this Court considered the first of two cases that concerned a contract/engagement letter between SRHS and KPMG, the accounting firm that audited SRHS's financial statements. KPMG's engagement letters were not attached to SRHS's minutes. *Id.* at 665. SRHS sued KPMG and alleged claims for breach of contract and professional negligence and claimed it was not award that its pension plan was grossly underfunded. *Id.* at 667-68. KPMG filed a motion to compel arbitration and claimed there was an enforceable arbitration clause in KPMG's engagement letters. *Id.* at 668-69. KPMG appealed the court's denial of the motion to compel arbitration. *Id.* at 668. The ruling was limited to the conclusion that the dispute-resolution provisions in KPMG's engagement letters were "unenforceable because the Board's minutes failed to include

29

enough terms and conditions of the KPMG letters and attachments; accordingly, determining the obligations and liabilities of both parties under those agreements is impossible." *Id.* at 674. *The Court did not rule that the contract between KPMG and SRHS was void or that the contract was invalid.* *Id.* In fact, SRHS sought enforcement of the contract that was not filed in its minutes when it filed the lawsuit for breach of contract. *Id.*

¶64. In *Wellness, Inc. v. Pearl River County Hospital*, 178 So. 3d 1287, 1289 (Miss. 2015), this Court considered a contract entered by a public hospital's administrator with Wellness to provide materials for a renovation, and the contract was not included in the hospital's minutes. The hospital filed a lawsuit against Wellness and asserted claims for fraud, conspiracy, and breach of contract that arose out of the contract. *Id.* As a defense, Wellness sought to compel mediation and arbitration, and the trial court denied the motion. *Id.* On appeal, this Court ruled:

> Mississippi Code Section 41-13-35(3) (Rev. 2013) requires a board of trustees of a community hospital to "keep minutes of its official business[.]" A community hospital board of trustees, as does any public board in the State of Mississippi, speaks and acts only through its minutes. And where a public board engages in business with another entity, "[n]o contract can be implied or presumed, it must be stated in express terms and recorded on the official minutes and the action of the board[.]"

> However, the entire contract need not be placed on the minutes. Instead, it may be enforced where "enough of the terms and conditions of the contract are contained in the minutes for determination of the liabilities and obligations of the contracting parties without the necessity of resorting to other evidence." However, it is the responsibility of the entity contracting with the Board, not the responsibility of the Board itself, to ensure that "the contract is legal and properly recorded on the minutes of the board."

*Id.* at 1290-91 (citations omitted). Then, the Court held:

30

In the instant case, the minutes from the Board of Trustees' meetings do not set forth sufficient terms to establish the liabilities and obligations of the parties, and thus the court cannot enforce the contract, much less the mediation or arbitration clauses therein. . . .

The Court will not draw an enforceable arbitration clause from such general, imprecise language. . . . "This Court has held that '[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." The burden of establishing the existence of an arbitration agreement, in line with the burden of establishing the existence of a contract, rests on the party seeking to invoke it. We find that Wellness has not carried its burden of proof, so the trial court did not err in denying the Motion to Compel Mediation and (If Necessary) Arbitration.

*Id.* at 1291-92 (citations omitted).

¶65.    It is important to note that, in **Wellness**, *this Court did not find the contract to be void*. Instead, the hospital sought to enforce the contract against Wellness. **Id.** This Court simply ruled only to not enforce the arbitration provision in the contract that was not attached to the hospital's minutes. **Id.** This Court remanded the case for the trial court to consider the hospital's claims under the contract. **Id.** at 1293.

¶66.    In **Thompson v. Jones County Community Hospital**, 352 So. 2d 795, 796 (Miss. 1977), a former employee sued the hospital under an employment contract. The trial court granted a motion to dismiss because the contract was not entered in the hospital board's minutes and "enough of the substance of the contract" was not in the minutes. **Id.** at 795. The minutes stated only that a four-year contract as executive director of the hospital had been granted to the plaintiff and that its acceptance had been unanimous after "appropriate discussions." **Id.** at 795-96. The Court ruled that because the minutes contained "no reference to the salary to be paid plaintiff for his services, . . . the Court may not determine the amount

of the salary." *Id.* at 797-98. Mississippi law does not declare such contracts to be void.

¶67. Finally, the majority does not consider that the words "void" and "invalid" have an important legal meaning and effect. The Court of Appeals ruled that "[v]oid ab initio means that a contract is null from the beginning if it seriously offends law or public policy, in contrast to a contract that is merely voidable at the election of one of the parties. Because of this, it is as if the contract never existed." *Wells Fargo Advisors, LLC v. Runnels*, 126 So. 3d 137, 144 (Miss. Ct. App. 2013). In *Home Base Litter Control, LLC v. Claiborne County*, the Court of Appeals ruled:

> A "void" contract is one that is illegal ab initio as a matter of law, whereas a "voidable" contract is one that is later set aside due to some external factor. "Void ab initio means that a contract is null from the beginning if it seriously offends law or public policy, in contrast to a contract that is merely voidable at the election of one of the parties." For example, a contract entered into by fraudulent inducement—an illegal factor outside the contract—renders a contract voidable, not void. A voidable contract will only be invalidated if "the one defrauded . . . act[s] promptly and finally to repudiate the agreement[.]" If no action is taken by the defrauded party, the voidable contract will continue legally in existence. A voidable contract can be revived, but a void contract cannot.

*Home Base Litter Control, LLC v. Claiborne Cnty.*, 183 So. 3d 94, 101 (Miss. Ct. App. 2015) (alterations in original) (citations omitted).

¶68. I can find no cases that discuss or support the finding of an invalid contract.[17] The

---

[17] The majority challenges this statement. Maj. Op. ¶ 21 n.6. The majority cites "*Wellness, Inc. v. Pearl River County Hospital*, 178 So. 3d 1287, 1290 (Miss. 2015) (holding that an arbitration agreement is *not valid* because the hospital board minutes did not include sufficient reference to liabilities and obligations to mediate or arbitrate)." Maj. Op. ¶ 21 n.6. The majority fails to recognize that, in *Wellness*, the arbitration agreement was a provision in the contract. *Id.* at 1289. The court did *not find the entire contract* to be invalid; instead, it only found the arbitration provision to be invalid. *Id.* at 1291-92. Moreover, the case was remanded to enforce the contract. *Id.* (emphasis added).

cases cited by the majority do not hold that the relevant contracts were void or invalid. Instead, these cases simply decide whether there are sufficient terms of the contracts in the minutes so as to allow the contracts or a specific contract provision to be enforced against the public entity that did not record the contract in its minutes. The majority does not and cannot cite an authority in which the court, in a declaratory judgment action, declared a contract to be void or invalid.

¶69. The majority fails to consider the import of the undisputed fact that the Prime Ground Lease was actually recorded in Jackson County's minutes. Accordingly, the Prime Ground Lease is in fact enforceable against Jackson County. The fact that SRHS did not include the Prime Ground Lease in its minutes does not give Jackson County the right to declare the Prime Ground Lease to be void. The majority cites no law for this principle, and I find no law that would support granting Jackson County a partial summary judgment when the Prime Ground Lease was properly recorded in its minutes.

¶70. Finally, the majority concludes that the "remaining leases in this case—the Secondary Ground Lease, the Occupancy Subleases and the Amended Occupancy Subleases—are between SRHS and MOB. [Because] we hold that the minutes rule was not satisfied as to the Prime Ground Lease . . . we conclude that the remaining leases are also invalid." Maj. Op. ¶ 25. However, because the majority finds this issue dispositive, I end my analysis here. The

The majority also cites "***Rawls Springs Utility District v. Novak***, 765 So. 2d 1288, 1292 (Miss. 2000) (holding that an agreement not included in the minutes of a public board 'render[s] the agreement *void*')." Maj. Op. ¶ 21 n.6. ***Novak*** has no relevance here. In ***Novak***, the Court ruled that an *oral contract* was void. ***Novak***, 765 So. 2d at 1292. There is no oral contract here. Indeed, the relevant contract here was in writing and was recorded in the minutes of Jackson County. ***Novak*** provides no governing principle applicable here.

33

majority's continued analysis "in the interest of completeness" is not necessary and thus is mere dicta and an advisory opinion. Maj. Op. ¶ 25. Nevertheless, I respectfully disagree with and dissent from the majority's analysis.

¶71. Because I find that the summary-judgment motions filed by Jackson County and SRHS should be denied, I would reverse the order granting partial summary judgment and remand the case for further proceedings. Therefore, I respectfully dissent as to Issues I and II. I concur with the majority that Issue III should be reversed and remanded.